286 F.2d 30
 STATE OF UTAH and Vernon P. Bridge, Appellants,
v.
UNITED STATES of America and the United States Civil Service Commission, Appellees.
STATE OF UTAH and Horace J. Gunn, Appellants,
v.
UNITED STATES of America and the United States Civil Service Commission, Appellees.
STATE OF UTAH and Panos J. Georgopoulos, Appellants,
v.
UNITED STATES of America and the United States Civil Service Commission, Appellees.
 Nos. 6447-6449.
 United States Court of Appeals Tenth Circuit.
 January 3, 1961.
 
 Vernon B. Romney, Salt Lake City, Utah (Walter L. Budge, Salt Lake City, Utah, was with him on brief), for appellants.
 Sherman L. Cohn, Washington, D. C. (George Cochran Doub, Washington, D. C., A. Pratt Kesler, Salt Lake City, Utah, Morton Hollander and Alan S. Rosenthal, Washington, D. C., were with him on brief), for appellees.
 Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and RICE, District Judge.
 MURRAH, Chief Judge.
 
 
 1
 These consolidated appeals are from the District Court's separate judgments affirming the Civil Service Commission's orders, which found the individual appellants guilty of activities prohibited by Section 12(a) of the Hatch Political Activity Act, 5 U.S.C.A. § 118k(a),[1] and ordering them discharged from their state employment.
 
 
 2
 From evidence adduced on hearing before the Civil Service Commission and duly certified to the District Court on review,[2] the court found that the individual appellants, Bridge, Gunn and Georgopoulos were all employees of the Utah Road Commission and subject to the jurisdiction conferred upon the Civil Service Commission by the Act; and that each of them did "directly or indirectly, coerce, attempt to coerce, command or advise other officers or employees subject to the Act to pay or contribute part of their salaries or compensation to the Republican Party organization of Utah for political purposes."
 
 
 3
 It appears from the record, without dispute, that the Republican Party of Utah planned a fund-raising dinner with tickets to be sold for $50 apiece. The various agencies of the state government were assigned quotas of tickets to be sold. Burton, Director of the Road Commission, wrote a letter[3] to his subordinates, stating that the Commission had been assigned three tickets. This was duly received by appellant Bridge, Chief of the Commission's Right of Way Design Department, and relayed to his subordinates with an accompanying message to the effect that each should contribute 1.3% of his monthly salary.[4] When the response to this letter was unproductive, a meeting of the employees was called, at which appellant Georgopoulos, Senior Highway Engineer and Acting Assisting Chief of the Right of Way Design Department, stated that the employees "may not receive deserved pay raises if we [don't] contribute to the Republican Party." Following this and other admonitions, the quota was met and turned over to appellant Gunn, the Commission's Public Information Officer, who had also engaged in solicitations among the employees.
 
 
 4
 Newspaper editorial comment on these activities apparently brought the matter to the attention of the Civil Service Commission with consequent investigation resulting in these statutory charges. The charges were subsequently dismissed as to Burton on the grounds that his "principal employment" was not with the Road Commission and he was not therefore within the scope of the Act.[5] The Commission also invoked its administrative discretion to dismiss the charges against the Road Commission Secretary, Allred, on the grounds that "his participation was minimal in amount and meager in result."
 
 
 5
 On review of the Commission's discharge orders, the trial court found that each of them was "supported by substantial evidence and in accordance with law."
 
 
 6
 At the threshold of the appeal, the United States, as appellee, takes the position that the discharging orders have become moot; and that we should therefore remand the cases to the District Court with directions to dismiss the actions. This rather anomalous contention is based upon the appellee's construction of Section 12(c) of the Act, (5 U.S.C.A. § 118k(c)), which provides in substance and effect that any party aggrieved by any determination or order of the Civil Service Commission may, within 30 days after notice of the determination or order, institute proceedings for the review thereof by filing a written petition in the appropriate District Court; but that the commencement of such proceedings shall not operate to stay the challenged determination or order of the Commission unless "(1) it is specifically so ordered by the court, and (2) such officer or employee is suspended from his office or employment during the pendency of such proceedings." These orders were not stayed and it is apparently agreed that the employees were never suspended. From this the government argues that the discharging orders automatically became effective at the expiration of 30 days from the date of notice thereof, and therefore moot.
 
 
 7
 Section 12(b) of the Act (5 U.S.C.A. § 118k(b)) provides that "If in any case the Commission finds that such officer or employee has not been removed from his office or employment within thirty days after notice of a determination by the Commission that such violation warrants his removal, or that he has been so removed and has subsequently (within a period of eighteen months) been appointed to any office or employment in any State or local agency in such State, the Commission shall make and certify to the appropriate Federal agency an order requiring it to withhold from its loans or grants to the State or local agency to which such notification was given an amount equal to two years' compensation at the rate such officer or employee was receiving at the time of such violation; * * *." The State of Utah seeks redress from the imposition of a 12(b) withholding order, but there is nothing in this record to show that any such withholding order has been entered by the Civil Service Commission. In this connection, the government says that a discharging order and a withholding order are separate and distinct appealable orders, contingently based upon different factual determinations, and inasmuch as there was no withholding order before the trial court nor this court, there is nothing for review except the mooted discharging orders. The effect of this argument is to hold that a judicial stay of the discharging order and a suspension of the appealing employees is a jurisdictional prerequisite to the right of judicial review of the merits of the Commission's determination. We do not think Congress intended to impose any such procedural prerequisites.
 
 
 8
 The obvious purpose of the provision to the effect that the commencement of review proceedings shall not operate as a stay unless ordered by the court and unless the employees are suspended is to make sure that the orderly administration of the Act shall not be hindered by judicial review. Thus the enforcement scheme provided for in 12(b) contemplates an order of discharge after a hearing and consequent penalties for failure to comply with such order. The judicial review provided in 12(c) does not, without more, operate to stay the enforcement proceedings. But this does not mean that Congress intended to provide that compliance with the order was prerequisite to the right of review accorded by the statute. To be sure, the withholding order is conditional and contingent upon failure to comply with a discharging order. Indeed, the separate orders are based upon separate and distinct considerations, but each is but a step in the integrated enforcement mechanism. If on appeal the discharging orders fall as not being supported in law and fact the withholding order necessarily falls with them. The appeal is from that which is basic to the rights of the parties, i. e. the discharging orders.
 
 
 9
 This is not a case where the purposes of the decree have been fulfilled or the law has spent itself on the operative facts leaving no justiciable issue. Cf. United States v. Alaska S. S. Co., 253 U. S. 113, 40 S.Ct. 448, 64 L.Ed. 808; Walling v. Shenandoah-Dives Mining Co., 10 Cir., 134 F.2d 395; Paradise Land & Livestock Co. v. Federal Land Bank, 10 Cir., 147 F.2d 594; Chicago Great Western Ry. Co. v. Beecher, 8 Cir., 150 F.2d 394; Sobel v. Whittier Corp., 6 Cir., 195 F.2d 361. Rather our cases are analogous to an appeal from an unsuperseded judgment, the levy and execution on which does not render moot the basic issues which underly the judgment and upon which its validity rests. Cf. Dakota County v. Glidden, 113 U.S. 222, 5 S.Ct. 428, 28 L.Ed. 981; Holcomb v. Holcomb, 93 U.S.App.D.C. 242, 209 F.2d 794; Hill v. United States, 6 Cir., 223 F.2d 699; Reserve Life Ins. Co., Dallas, Texas v. Frankfather, 123 Colo. 77, 225 P.2d 1035, 39 A.L.R.2d 146; Annotation § 10(b), p. 175; 2 Am.Jur., Appeal and Error § 222; 4 C.J.S. Appeal and Error § 214, p. 636. We hold that the issues did not become moot when and if the discharging orders became effective for failure to stay and suspend.
 
 
 10
 The only question on the merits is whether the separate judgments of the District Court which affirmed the Commission's orders can be said to be clearly erroneous.
 
 
 11
 The appellants voice the contention that since they were acting only under the directions and control of Burton, the dismissal of the charges as to him without according like treatment to them was arbitrary and capricious. However, the dismissal of Burton was not a matter of administrative discretion. Upon finding that Burton's principal employment was not "in connection with" the State Road Commission, the Civil Service Commission was required to dismiss the charges for lack of jurisdiction over his activities. 5 U.S.C.A. § 118k(a). To be sure the appellants were under the direction of Burton, but they were all in positions of secondary responsibility from which they made demands upon those employed under them. There is nothing to indicate that they acted under duress, and it is no defense to proscribed activities that they were committed on orders from those in higher authority not within the coverage of the Act.
 
 
 12
 It is also contended that to apply the rule of "diminishing responsibility" to Allred while not applying it equally to these appellants, was arbitrarily unjust. We agree with the Commission that Allred's activities were "minimal in amount." He did, admittedly, solicit funds from other employees, but their affidavits clearly show that no coercion or pressure was used and the donations were free and voluntary. Even if we did not agree with the Commission's critical findings, we could not say that the dismissal of Allred, even if erroneous, leads to the conclusion that all of the charges must be dismissed. It would be fallacious to say merely because one violator escapes punishment that others, equally guilty, should also be dismissed.
 
 
 13
 In determining whether the affirming judgments of the trial court are clearly erroneous, we must remember that while judicial review extends to both law and fact, "Congress entrusted to the Commission the administration of the Act under defined policies and established standards." State of Oklahoma v. United States Civil Service Commission, 10 Cir., 153 F.2d 280, 283. And review "is limited to an examination into whether or not the Commission abused its discretion in the order of removal." State of Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 145, 67 S.Ct. 544, 555, 91 L.Ed. 794. (same case affirmed).
 
 
 14
 In these circumstances, we cannot say the Commission arbitrarily and capriciously drew the factual line between the innocuous and the culpable. The judgments are affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 12(a) provides that: "No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall (1) use his official authority or influence for the purpose of interfering with an election or a nomination for office, or affecting the result thereof, or (2) directly or indirectly coerce, attempt to coerce, command, or advise any other such officer or employee to pay, lend, or contribute any part of his salary or compensation or anything else of value to any party, committee, organization, agency, or person for political purposes * * *."
 
 
 [2]
 Section 12(c) of the Act provides that: "Any party aggrieved by any determination or order of the Commission * * may * * * institute proceedings for the review thereof by filing a written petition in the district court of the United States for the district in which such officer or employee resides * * *. The review by the court shall be on the record entire * * * and shall extend to questions of fact and questions of law. * * * The court shall affirm the Commission's determination or order * * * if the court determines that the same is in accordance with law. * * * The judgment and decree of the court shall be final, subject to review by the appropriate circuit court of appeals * * *."
 
 
 [3]
 
 "State Road Commission of Utah
"442 State Capitol
"Salt Lake City, Utah May 15, 1958
 "Dear Vern Bridge: As you know, our government is based on a two-party system. Every citizen should participate and support the party of his choice. Only by active participation by all citizens and continued support of the two-party system can our form of government be preserved. Administrative leadership changes at the will of the people. At present, it is represented by the Republican Party, in which we all have full confidence.
 "As you know, it takes money to organize and maintain a party organization, so that it may keep the public informed and carry out the usual election procedures. All should support their party organizations by supporting fund-raising drives or by direct contributions. "On May 21, the State Republican party will hold a fund-raising dinner at the New Utah Motel Auditorium.
 "All the various departments of the state government have been requested to help in this drive. The State Road Commission has been asked to contribute its share to this event. In prorating the tickets given to us, we have assigned your department 3 tickets.
 "May we ask your cooperation and support of this assignment which has been given us. Will you please handle this prior to noon Tuesday, May 20th. We shall contact you for a report at that time.
 "Very truly yours,
 "C. Taylor Burton
 "Chairman,
 State Road Commission"
 
 
 [4]
 
 "May 16, 1958
 "Attached is a letter from Mr. Burton.
 "Since these tickets are $50.00 apiece, the most equitable manner of handling this is for each employee to donate 1.3 per cent of his monthly salary.
 "Will you all kindly cooperate in order not to throw an additional burden on a few.
 "Kindly show the amount on the back of this letter you will donate on May 20, along with your name. The tickets can then be raffled off by picking three names of those donating.
 "V. P. Bridge
 "Chief Right-of-Way Designer"
 
 
 [5]
 5 U.S.C.A. § 118k(a), note 1, supra