**C. O. JARVIS, Plaintiff-Appellee,**

**v.**

**UNITED STATES CIVIL SERVICE COM-MISSION et al., Defendant-Appellant.**

**COMMONWEALTH OF KENTUCKY, Plaintiff-Appellee,**

**v.**

**UNITED STATES CIVIL SERVICE COM-MISSION, Defendant-Appellant.**

**Nos. 17300, 17301.**

United States Court of Appeals Sixth Circuit.

Aug. 31, 1967.

---

**340**

John C. Eldridge, Civil Division, Dept. of Justice, Washington, D. C., Barefoot Sanders, Asst. Atty. Gen., David L. Rose, Robert E. Kopp, Attys., Department of Justice, Washington, D. C., George I. Cline, U. S. Atty., Lexington, Ky., on brief, for appellants.

Paul E. Tierney, Frankfort, Ky., Ben J. Mann, Frankfort, Ky., on brief, for appellee, C. O. Jarvis.

Henri L. Mangeot, Deputy Atty. Gen., Frankfort, Ky., Robert Matthews, Atty. Gen., Frankfort, Ky., on brief, for appellee, Commonwealth of Kentucky.

Before WEICK, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.

WEICK, Chief Judge.

This is an appeal by the United States Civil Service Commission from a judgment of the District Court setting aside the Commission's order determining that C. O. Jarvis, Manager of the Harlan and Middlesboro offices of the Kentucky Department of Economic Security, Bureau of Employment Security, violated Section 12 of the Hatch Political Activities Act, as amended, by engaging in political activity, and that such violation warranted his removal from the employment of the Commonwealth of Kentucky. 5 U.S.C. § 118k.

The proceeding before the Commission was instituted by its General Counsel in filing a Letter of Charges against Jarvis and the Commonwealth.[1]   Answers were

---

1. "United States of America
Before the United States Civil Service Commission
In the MATTER OF C. O. JARVIS and THE STATE OF KENTUCKY Docket No. 257   *Letter of Charges*
The United States Civil Service Commission, being in receipt of information which warrants, under the provisions of Section 12 of the Act of August 2, 1939, 53 Stat. 1147, as amended by the Act of July 19, 1940, 54 Stat. 767 (5 U.S.C. 118k), hereinafter referred to as the Hatch Act, an investigation of the improper political activities of C. O. Jarvis, Senior Employment Office Manager, Department of Economic Security, Bureau of Employment Security, State of Kentucky, does hereby issue its Letter of Charges setting forth a summary of alleged violations.

When used in this Letter of Charges the term 'Democratic Party' means a political party whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected; the term

'political campaign' means the political campaign of a candidate for nomination by, or election as the candidate of, a political party as defined above and the term 'political management' means the management of a political campaign as defined above.

The said C. O. Jarvis has been employed by the Department of Economic Security, Bureau of Employment Security, State of Kentucky from July 1947 to the present and now holds the position of Senior Employment Office Manager; that by virtue of said employment, his principal employment is in connection with an activity, the Department of Economic Security, Bureau of Employment Security, State of Kentucky, which is financed in whole or in part by loans or grants made by the United States.
It is charged:

I

That while employed as set forth above, the said C. O. Jarvis in and about September and October 1962 did directly or indirectly, coerce, attempt to coerce, command, or advise other officers or

filed thereto. Jarvis filed a motion to require the charges to be made (1) more specific by naming and otherwise identifying the person or persons who supplied the information upon which the charges were based, and (2) more definite and certain by naming and otherwise identifying the officers and employees referred to in the charges. A similar motion was filed by the Commonwealth.

The Hearing Examiner, on loan from the Interstate Commerce Commission, denied both motions but thereafter, and prior to the hearing, the Commission supplied both Jarvis and the Commonwealth with the names and addresses of all the employees whom it intended to use as witnesses. A full evidentiary hearing was held before the Hearing Examiner, at which Jarvis and the Commonwealth were both represented by counsel.

The Hearing Examiner filed his Preliminary Report to the Commission in which he found that the charges against Jarvis and the Commonwealth had been sustained by the evidence, and recommended Jarvis' removal from employment. Subsequently, the Hearing Examiner filed his Final Report to the Commission, in which, on the same record which was before him in his Preliminary Report, he reversed himself and found that the charges had not been sustained by the evidence and recommended their dismissal.

The Commission in its Report and Order made detailed findings and determined that Jarvis had violated the Act and that his removal was warranted. In so doing, the Commission adopted the findings, conclusions and recommendations in the Hearing Examiner's Preliminary Report not inconsistent with the Commission's Report and Order and rejected the Examiner's Final Report.

Jarvis and the Commonwealth then filed separate petitions in the District Court to obtain a judicial review of the order of the Commission. The cases were ordered consolidated by the Court. The

employees of the Department of Economic Security, Bureau of Employment Security, State of Kentucky, to pay or contribute money to the Kentucky Democratic Party fund raising dinner held Friday, October 19, 1962, in Freedom Hall, Louisville, Kentucky.

II

That while employed as set forth above the said C. O. Jarvis took an active part in political management or in political campaigns in that:

(1) In and about September and October 1962, he assisted in, engaged in, and promoted a plan to solicit and obtain political contributions from officers and employees of the Department of Economic Security, Bureau of Employment Security, State of Kentucky, in the Harlan and Middlesboro, Kentucky Offices for use of the Democratic Party Fund Raising Dinner Committee.

(2) In and about September and October 1962 he solicited and received contributions from officers and employees of the Department of Economic Security, Bureau of Employment Security, State of Kentucky, employed at Harlan, Kentucky for the purchase of two $100.00 tickets to the Democratic Party Fund Raising Dinner held on Friday, October 19, 1962.

(3) In and about October 1962 he promoted a drawing whereby employees in the Harlan and Middlesboro, Kentucky Offices of the Department of Economic Security, Bureau of Employment Security, State of Kentucky, who had contributed toward the purchase of two $100.00 tickets for the Democratic Party Fund Raising Dinner, were permitted to draw for the said tickets.

WHEREFORE, since the acts herein described on the part of C. O. Jarvis provide reason to believe that he has violated the provisions of Section 12(a) of the Hatch Act, the United States Civil Service Commission on this 8 day of March 1963, issues this Letter of Charges against the respondents, C. O. Jarvis and the State of Kentucky, together with the Notice attached hereto and made a part hereof as required by Section 12(b) of the aforesaid Act.

/s/ L. V. Meloy
L. V. Meloy
General Counsel
U. S. Civil Service Commission"

Commission filed a motion for summary judgment.

The District Court, in a memorandum opinion, held that due process had been denied to Jarvis by the Commission in denying his motion to make the Letter of Charges more definite and certain by naming and otherwise identifying the other officers or employees referred to in the charges. The Court was under the mistaken belief that the names of employees had been furnished only to the Commonwealth and not to Jarvis, whereas the record shows, and it is conceded here, that they were furnished to counsel for both. In any event, the Court ruled that even the furnishing of the names was insufficient because Jarvis was not told which particular employees he had coerced, solicited, commanded or advised.

The Court then entered an order setting aside the Commission's order and remanding for a new hearing without reviewing the record. In the same order the Court denied the Commission's motion for summary judgment.

Procedural Aspects of the Case

We will first discuss the procedural aspects of the case. The District Court held only that the Commission erred in overruling the second ground of Jarvis' motion, and that this deprived the plaintiffs of due process of law.

■ It is clear to us that General Counsel for the Commission, in furnishing to plaintiffs' counsel the names and addresses of all of the employees whom he had intended to call as witnesses to support the charges, fully complied with the second ground of Jarvis' motion.[2]

The Harlan and Middlesboro offices of the Bureau of Employment Security were small offices, managed by Jarvis. Harlan had eight or nine employees, while Middlesboro had only three or four. All of these employees were subordinates of Jarvis. It was not necessary for the Commission otherwise to identify the employees claimed to have been coerced, solicited, commanded or advised, as held by the District Court. The Letter of Charges sufficiently identified them as being the employees in the two offices. Jarvis presided at the meeting at which the drawing took place. He knew the names of those who participated in the drawing and who made contributions. He cannot complain about not being informed of what he already knew. These employees were all interviewd by counsel for plaintiffs prior to the hearing. The record does not indicate that anyone was taken by surprise at the hearing.

There is no merit to the claim that the charges were vague and indefinite. To the contrary, they were clear and explicit and fairly advised the plaintiffs of what they would have to meet in order to prepare their defense. The Act required only "a notice setting forth a summary of the alleged violation and giving the time and place of the hearing." 5 U.S.C. § 118k(b). The charges set forth a complete and detailed summary, and fully complied with the Act.

The District Court did not review the record but based its decision entirely on the procedural ground which we have held to be without merit. We think it would have been preferable for the District Court to have reviewed the record so that the entire case, and not just part of it, would be presented for review by the Appellate Court.

■ The parties have asked us to review the record, which was the function of the District Court initially. They were undoubtedly influenced by the long delay which has ensued in this case since

---

**2.** It is important to point out that the first ground of Jarvis' motion requested the names of those persons who had informed the Commission of his alleged misconduct, not the witnesses whom it intended to call. There is no right to such information in most cases, since the identity of an informer has little bearing on the merits of the case. See McCray v. State of Illinois, 386 U.S. 300, 87 S.Ct. 1056, 18 L.Ed.2d 62 (1967). In addition, it is quite clear that even in full-fledged criminal proceedings there is no absolute right to discovery of the prosecution's witnesses. The Commission's actions in this respect, then, actually went beyond its duty.

the alleged violation (September and October, 1962), and by the time and expense involved in the event of a second appellate review. If that occurred, the decision of the District Court would not relieve us of the duty of independently determining whether the Commission's order is supported by substantial evidence and is in accordance with law. This is the sole purpose of judicial review of the Commission's order. 5 U.S.C. § 118k(c); State of Oklahoma v. United States Civil Serv. Comm., 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947); State of Utah v. United States, 286 F.2d 30 (10th Cir. 1961) cert. denied 366 U.S. 918, 81 S.Ct. 1093, 6 L.Ed.2d 240 (1961).

■ Under these circumstances, it is within our discretion to review the record and we have decided to exercise it and to review the record now. Cf. O'Leary v. Brown-Pacific-Maxon, 340 U.S. 504, 71 S.Ct. 470, 95 L.Ed. 483 (1951); Eschbach v. Contractors, 181 F.2d 860 (7th Cir. 1950).

### Substantial Evidence Supports the Commission's Order

The evidence before the Commission consisted of stipulations, oral testimony and exhibits. A significant part of the oral testimony was uncontroverted. The disputed part was resolved against the plaintiffs by the Commission, which was its province.

Jarvis worked for a state agency which received $36,0000,000 from the Federal Government in 1962 and hence was a federally financed state agency within the meaning of the Hatch Act. As office manager he had power to make initial determinations with respect to hiring, promotion, demotion, and performance ratings of his subordinates, and to initiate disciplinary proceedings against them.

It is undisputed that Jarvis received two $100-tickets from Democratic Party headquarters in Louisville, for a Party fund-raising dinner. Jarvis called and presided over a staff meeting of all the employees of the Harlan office, in the course of which meeting he told the employees that he had received the tickets. It was decided at the meeting that the cost of the tickets would be shared pro rata by the employees who would participate in a drawing to determine the winner from each office. The drawing was held at Jarvis' desk, with his permission, and during working hours. Paper slips, each containing the name of an employee of the respective offices, were placed in a hat. Jarvis asked employee Hembree to draw two names and the winners were announced. Jarvis then threw away the excess name slips. Each of the employees who participated in the drawing paid fifteen dollars as his contribution to the Party.

Employees Howard and Hembree testified that Jarvis told them they were each to contribute fifteen dollars and that each gave him a check payable to the Party. Hembree further testified that Jarvis asked him for his $15-check before the drawing took place, and that he had not previously indicated a willingness to contribute or to participate in the drawing. Jarvis' secretary placed her $15-check on his desk. Lillian Cleaton placed her check on the secretary's desk. Employee Williamson, who was one of the winners, sent her check to the Party. She likened her contribution to paying union dues.

Jarvis denied that he asked Howard, Hembree or any of the employees to make a contribution. He denied that Howard and Hembree had given him their checks. He further denied that he had coerced or influenced any of the twelve employees to contribute. The Commission, however, credited the testimony of Howard and Hembree and held that the activities of Jarvis constituted a violation of the Act.

■ All of the employees who were called as witnesses by the Commission testified on cross-examination that they were not coerced and that their contributions were voluntary. The Commission, however, held that the plan for the contributions and drawing was itself coercive and that Jarvis violated the Act when he permitted his influence to be a

factor in inducing a subordinate to make a contribution. This has been its consistent administrative interpretation of the Act and is entitled to weight in the courts. Zemel v. Rusk, 381 U.S. 1, 85 S. Ct. 1271, 14 L.Ed.2d 179 (1965).

The Commission was not inexperienced in evaluating testimony of subordinate employees against their superiors and apparently did not give much weight to their conclusions that they were not coerced or that the contributions which they made at the behest of their superior, were voluntary.

■ In any event, the question whether Jarvis directly or indirectly coerced or attempted to coerce or advise his subordinates was a mixed question of fact and law, to be determined by the Commission upon consideration of all of the evidence and the inferences which it was entitled to draw therefrom. The Commission was not bound by the conclusions of the subordinates that they were not coerced.

The plan for the drawing was somewhat similar to the one held unlawful in State of Utah v. United States, 286 F. 2d 30 (10th Cir. 1961) cert. denied 366 U.S. 918, 81 S.Ct. 1093, 6 L.Ed.2d 240 (1961), although the means used in that case were direct and much more forceful than in the present case.

The Commission further found as a fact that Jarvis did solicit contributions from Howard and Hembree. That finding is supported by the testimony of these two witnesses.

The Act condemns indirect as well as direct coercion, or an attempt to coerce. It forbids even advice to pay or contribute. Contrary to the contention of the Commonwealth, the Commission did find that Jarvis did advise his subordinates to contribute.

■ In our opinion, the evidence abundantly supports the Commission's determination or order and it did not abuse its discretion in determining the factual issues against Jarvis. We find no errors of law in the record. The Commonwealth may still continue Jarvis in its employ, despite the Commission's order, but if it does, his salary for a period of two years is required to be withheld from its Federal loans or grants. 5 U.S. C. § 118k. In any event, the decision with respect to Jarvis determines the rights of the Commonwealth since both were accorded the same treatment.

The judgment of the District Court is reversed and the Court now coming to enter the judgment which the District Court should have entered, it is ORDERED that the determination or order of the Commission be and it is hereby affirmed.