Jerome **FISHKIN,** an individual, and the State of California, Plaintiffs,

v.

**UNITED STATES CIVIL SERVICE COMMISSION et al., Defendants.**

**Civ. No. 49102.**

United States District Court,
N. D. California.

May 19, 1969.

Albert Bendick, Berkeley, Cal., for plaintiff Fishkin.

Thomas C. Lynch, Atty. Gen. State of Cal., Sacramento, Cal., for plaintiff State of Cal.

John A. Nejedly, Dist. Atty., George W. McClure, Chief Deputy Dist. Atty., Martinez, Cal., for County of Contra Costa.

Cecil F. Poole, U. S. Atty., David R. Urdan, Chief Asst. U. S. Atty., San Francisco, Cal., for U. S. Civil Service.

Paul N. Halvonik, Charles C. Marson, San Francisco, Cal., Coleman A. Blease, Sacramento, Cal., for amicus curiae American Civil Liberties Union of Northern California.

Before DUNIWAY, Circuit Judge, and WOLLENBERG and SWEIGERT, District Judges.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an action brought under the provisions of 5 U.S.C. § 1508, and 42 U. S.C. § 1983, by plaintiffs Fishkin and the State of California to review an order of the United States Civil Service Commission (hereinafter called the Commission), dated March 3, 1968.

Plaintiffs pray for declaratory relief to the effect that 5 U.S.C. §§ 1502(a) (3)[1] and 1506[2] (the Hatch Act) are unconstitutional, and for an injunction enjoining defendants (members of the Commission, Jornlin (Director of the Social Service Department of Contra Costa County), and McBrien (Administrator of Contra Costa County)) from dismissing Fishkin and from applying or enforcing (1) the order of the Commission, (2) a notice of dismissal served on Fishkin, and (3) the statute of 5 U.S.C. § 1502(a) (3).

The case is presently before the court on the parties' cross-motions for summary judgment.

The facts of the case are substantially as follows:

Plaintiff Fishkin had been employed as an Administrative Analyst by the Contra Costa County Social Service Department since August 16, 1965. His job was to arrange for office space, desks, telephones, for use by social workers. On June 7, 1966, while so employed, Fishkin became a candidate for Member of County Central Committee, Third Supervisorial District in the Democratic Primary election held in Contra Costa County and also served as Director, Region Five, California Federation of Young Democrats during this same period of time.

Contra Costa County receives federal grants through the State of California for the operation of its Social Service Department.

On January 19, 1967, the Commission initiated a proceeding under 5 U.S.C. § 1501, charging Fishkin with engaging in prohibited political activity.

On March 3, 1968, the Commission issued its Report and Order, finding that Fishkin had violated 5 U.S.C. § 1052(a) (3), as charged, and that the violation warranted removal. Upon receipt of

---

1. Title 5 U.S.C. § 1502(a) (3) provides: "(a) A State or local officer or employee may not—
   (3) take an active part in political management or in political campaigns."
   Title 5 U.S.C. § 1501(4) and (5) provides:
   "for the purpose of this chapter—
   (4) "State or local officer or employee" means an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency, but does not include (A) an individual who exercises no functions in connection with that activity; or (B) an individual employed by an educational or research institution, establishment, agency, or system which is supported in whole or in part by a State or political subdivision thereof, or by a recognized religious, philanthropic, or cultural organization; and
   (5) the phrase "an active part in political management or in political campaigns" means those acts of political management or political campaigning which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President."

2. Title 5 U.S.C. § 1506 provides in pertinent part:
   "(a) When the Civil Service Commission finds—
   (1) that a State or local officer or employee has not been removed from his office or employment within 30 days after notice of a determination by the Commission that he has violated section 1502 of this title and that the violation warrants removal; or
   (2) that the State or local officer or employee has been removed and has been appointed within 18 months after his removal to an office or employment in the same State in a State or local agency which does not receive loans or grants from a Federal agency;
   the Commission shall make and certify to the appropriate Federal agency an order requiring that agency to withhold from its loans or grants to the State or local agency to which notice was given an amount equal to 2 years' pay at the rate the officer or employee was receiving at the time of the violation. When the State or local agency to which appointment within 18 months after removal has been made is one that receives loans or grants from a Federal agency, the Commission order shall direct that the withholding be made from that State or local agency."

this Report and Order, Contra Costa County notified Fishkin of his dismissal.

Plaintiffs contend that the Hatch Act is unconstitutional on its face and as applied, for the following reasons: (1) it violates the First Amendment by reason of its overbreadth and vagueness; (2) it infringes upon the fundamental right to engage in political activity in violation of the guarantees of the Ninth and Tenth Amendments; (3) it arbitrarily deprives persons of their liberty and property in violation of the Fifth and Fourteenth Amendments by irrationally and invidiously discriminating against publicly as compared with privately employed persons, and against State and local agency employees who are paid in part by federal funds as compared with State and local agency employees who are not so paid; and (4) it deprives persons of their liberty and property in violation of the Fifth and Fourteenth Amendments because its vague and indefinite provisions furnish no sufficiently ascertainable standard of conduct. (See Complaint, par. III, p. 2.)

In United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), and Oklahoma v. United States Civil Service Comm'n, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947), the Supreme Court upheld the constitutionality of the Hatch Act against similar claims

that the Act violated the First, Fifth, Ninth and Tenth Amendments.

Plaintiffs claim that *Mitchell* is no longer good law for the following reasons:

First, plaintiffs argue that *Mitchell* is based upon the premise that public employment may be conditioned upon the surrender of constitutional rights which could not be abridged by direct governmental action, a premise which, plaintiffs contend, has been since rejected by the Supreme Court in Keyishian v. Board of Regents, 385 U.S. 589, 605, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967), citing a series of decisions.[3]

Second, plaintiffs argue that *Mitchell* rests upon the assumption that the substantive due process standard of "reasonableness" is a proper standard for First Amendment adjudication, an approach which, plaintiffs contend, has been rejected in that Justice Black's dissent in *Mitchell*[4] has been followed in a line of cases.[5]

Third, plaintiffs argue that the Supreme Court has fashioned new tools for adjudication in this area of constitutional law—tools which were not employed in *Mitchell*, namely, that where legislation encroaches upon First Amendment rights, (a) the government must prove a compelling need for the legislation, Sweezy v. New Hampshire, 354 U.S. 234,

---

3. Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956); Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961); Baggett v. Bullitt, 377 U.S. 360, 84 S.Ct. 1316, 12 L.Ed.2d 377 (1964); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960), and Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958).

4. "(L)aws which restrict the liberties guaranteed by the First Amendment should be narrowly drawn to meet the evil aimed at and to affect only the minimum number of people imperatively necessary to prevent a grave and imminent danger to the public." 330 U.S. 110, 67 S.Ct. 574 (1947).

5. Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Gibson v. Florida Legislative Investigation Commission, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Shelton v. Tucker, *supra;* Bates v. City of Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960); Wieman v. Updegraff, *supra;* Torcaso v. Watkins, 367 U.S. 488, 81 S.Ct. 1680, 6 L.Ed.2d 982 (1961); Cramp v. Board of Public Instruction, *supra;* Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Baggett v. Bullitt, *supra;* Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966); Keyishian v. Board of Regents, *supra.*

77 S.Ct. 1203, 1 L.Ed.2d 1311 (1957); (b) the restrictions must be drawn with narrow specificity, Shelton v. Tucker, *supra*; and (c) the government must prove the absence of less onerous alternatives, Sherbert v. Verner, *supra.*

Defendants, on the other hand, take the position that *Mitchell* and Oklahoma are still good law and are controlling for the following reasons:

First, defendants contend, lower federal courts have relied upon and cited the *Mitchell* case to defeat constitutional challenges to the Act, for example, Gray v. Macy, 239 F.Supp. 658, 660 (D.Or. 1965), reversed on other grounds, 358 F.2d 742 (9th Cir.1966); Democratic State Central Committee v. Andolsek, 249 F.Supp. 1009, 1018–1019 (D.Md. 1966).

Second, defendants point out that the Supreme Court denied a request for a writ of certiorari in a Hatch Act case, Utah v. United States, 286 F.2d 30 (10th Cir.1961), cert. den., 366 U.S. 918, 81 S. Ct. 1093, 6 L.Ed.2d 240 (1961); also that in other cases presenting comparable issues, the Supreme Court has cited *Mitchell* as an example of reasonable restrictions which government may impose upon the exercise of First Amendment rights by its employees.[6]

Third, defendants point out that other federal courts have cited *Mitchell* as precedent for the government's constitutional power to reasonably restrict the exercise of the right of free speech by government employees.[7]

Fourth, defendants argue that in three recent cases state courts, although invalidating state statutes prohibiting kinds of political activity which are permitted under the Federal Act, have assumed that *Mitchell* establishes the constitutionality of the Federal Act. See,

Fort v. Civil Service Comm'n of Alameda County, 51 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964); Belshaw v. Berkeley, 246 Cal.App.2d 493, 54 Cal. Rptr. 727 (1966); Minielly v. Oregon, 242 Or. 490, 411 P.2d 69 (1966).

In order to complete the decisional background concerning the vitality of *Mitchell* and *Oklahoma,* we note two relatively recent cases which have not been cited by any of the parties in the pending case: Palmer v. U. S. Civil Service Comm'n, 191 F.Supp. 495 (S.D.Ill.1961), reversed in 297 F.2d 450 (7th Cir.1962), cert. den. 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962), and Engelhardt v. U. S. Civil Service Comm'n, 197 F.Supp. 806 (M.D.Ala.1961), affirmed in 304 F. 2d 882 (5th Cir.1962).

In *Palmer* the district court had held the Hatch Act unconstitutional as applied to an officer of a state agency, which received federal funds, because, among other things, the Act violated Fifth Amendment rights. The Court of Appeals reversed and upheld the constitutionality of the Hatch Act as settled and controlled by *Mitchell* and *Oklahoma.*

In *Engelhardt,* a case similarly involving the application of the Hatch Act to an officer of a federally funded state agency, the district court held the Act constitutional, citing *Mitchell* and *Oklahoma,* and the Court of Appeals affirmed.

■ It is well established that a principle of law, which has been declared by the Supreme Court of the United States is binding upon the lower courts. Although this rule of stare decisis is based upon expediency and public policy and is not always or universally applicable, it should be respected by the courts, espe-

6. See, American Communications Ass'n v. Douds, 339 U.S. 382, 398, 70 S.Ct. 674, 94 L.Ed. 925 (1950); Garner v. Board of Public Works, 341 U.S. 716, 721, 71 S.Ct. 909, 95 L.Ed. 1317 (1951); Communist Party of the United States v. Subversive Activities Control Board, 367 U.S. 1, 96–97, 81 S.Ct. 1357, 6 L.Ed.2d

625 (1961); Wood v. Georgia, 370 U.S. 375, 394–395 n. 21, 82 S.Ct. 1364, 8 L.Ed. 2d 569 (1962).

7. Swaaley v. United States, 376 F.2d 857, 863, 180 Ct.Cl. 1, (1967); and Meehan v. Macy, 129 U.S.App.D.C. 217, 392 F. 2d 822 (1968).

cially by a trial court such as the United States District Court.

■ Trial courts should not declare a statute unconstitutional when constitutionality has been expressly upheld by the court of last resort unless there are cogent reasons for such a departure from stare decisis.

■ Courts may decline to follow precedent when it is apparent that the reasons on which the precedent was based no longer exist or when the reasons were based on distinction or differences which have been altered by later judicial decisions, or when the precedent cannot be followed consistently with the traditional policy of the courts to adapt the law to the needs of the times. Where, however, a decision of the Supreme Court has been long and generally followed and has not been questioned by the Supreme Court, these considerations should not be lightly utilized by a trial court to support departure even when later decisions of the Supreme Court on different subject matter contain implications claimed to be at variance with the precedent.

■■ As a court should do, particularly when the constitutionality of a statute is in question, we confine our decision to the case before us. See, *Mitchell, supra,* 330 U.S. at 92, 94, 67 S.Ct. 556. Here it is clear to us, and plaintiff's counsel conceded at oral argument, that plaintiff's conduct falls within the language of 5 U.S.C. § 1502(a) (3), without the necessity of resorting to 5 U.S.C. § 1501(5). It is not claimed that any pre July 19, 1940 determination of the Commission excludes plaintiff's conduct from the language of § 1502(a) (3). Thus, arguments as to overbreadth of the statute brought about by the determinations referred to in § 1501(5) are wide of the mark as applied in this case.

Plaintiff's government position, so far as his authority and responsibility are concerned, falls between that of the employee Poole in *Mitchell* and that of the employee Paris in *Oklahoma.* Poole was "a roller in the mint" (*Mitchell, supra.* 330 U.S. at 101, 67 S.Ct. 570); Paris was a member of the Oklahoma State Highway Commission (*Oklahoma, supra,* 330 U.S. at 130, 67 S.Ct. 554). Fishkin, unlike Poole, but like Paris, falls in the "administrative category of civil service" mentioned by Justice Douglas in his dissent in *Mitchell, supra,* 330 U.S. at 120, 67 S.Ct. 579. Congress may have had some such distinction in mind when it excepted from the Act any state employee who "exercises no functions in connection with * * * [a Federally financed] activity" (5 U.S.C. § 1501(4) (A) ). It can hardly be said that Fishkin does not exercise such functions.

The governmental interests upheld by the Court in *Mitchell* and *Oklahoma* fully apply to the facts of the present case. Fishkin's conduct could (a) undermine public confidence by inducing a public belief that the Contra Costa County Social Service Department engaged in partisan political activity and made decisions on that basis, (b) undermine the position of Fishkin's supervisor, especially regarding actions taken with respect to Fishkin, (c) undermine the morale of fellow employees by leading them to believe that their own political views might affect the quality and quantity of the services that Fishkin is supposed to provide for them, and (d) lead to political pressures on Fishkin himself.

Without lengthening this opinion by a detailed analysis of plaintiffs' arguments concerning judicial trends bearing upon the constitutional issue here presented, we simply say that in our opinion *Mitchell* and *Oklahoma,* which have expressly upheld the constitutionality of the Hatch Act, have not been impliedly overruled by the Supreme Court nor has that tribunal otherwise indicated views sufficient to justify departure from those cases in the case now before us.[8]

---

8. See also, Kearney v. Macy, et al., 1969, 409 F.2d 847 by the Court of Appeals

for our Ninth Circuit, holding that Mitchell "has not been overruled either ex-

In our opinion *Mitchell* and *Oklahoma* are controlling on the constitutional issue and are binding on this court.

Accordingly, defendants' motion for summary judgment is granted and plaintiffs' motion for summary judgment is denied.

pressly or by implication by subsequent decisions of the Supreme Court of the United States." In that case the Court of Appeals confined its decision to the particular case that was before it, just as we do here.