**Bob Fred ASHE, Appellant,**

v.

**Harold R. SWENSON, Warden, Appellee.**

**No. 19013.**

United States Court of Appeals
Eighth Circuit.

July 30, 1968.

Before VAN OOSTERHOUT, Chief Judge, BLACKMUN, Circuit Judge, and VAN PELT, District Judge.

BLACKMUN, Circuit Judge.

This habeas corpus appeal by a state prisoner presents to us the question of the continuing validity of Hoag v. State of New Jersey, 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed.2d 913 (1958), a decision in which the Supreme Court divided five-to-three, with Mr. Justice Brennan not participating, and of Ciucci v. State of Illinois, 356 U.S. 571, 78 S.Ct. 839, 2 L.Ed.2d 983 (1958), a five-to-four decision. Four of the five Justices (Justices Frankfurter, Burton, Clark and Whittaker) who, with Mr. Justice Harlan, comprised the majority in both cases are no longer active members of the Court.

The appellant, Bob Fred Ashe, is serving a 35 year sentence in the Missouri penitentiary. This came about (a) by reason of his conviction by a state jury on June 22, 1960, of the crime of robbery in the first degree in violation of V.A. M.S. § 560.120 (1953) ;[1] (b) by the punishment prescribed by § 560.135 [2] for a robbery where a dangerous weapon was used; and (c) by the provisions of the Missouri Habitual Criminal Act, § 556.280 (Ashe had been convicted in federal court in August 1950 for a violation of 18 U.S.C. § 659 (theft from interstate shipment), and also had been convicted in Jackson County, Missouri, Circuit Court in December 1952 for second degree burglary (§ 560.125) and for tampering with a motor vehicle (§ 560.175), and two year sentences imposed with respect to each of these three offenses had been served or commuted).

Robert G. Duncan of Pierce, Duncan, Beitling & Shute, Kansas City, Mo., for appellant and filed brief.

Courtney Goodman, Jr., Asst. Atty, Gen., for Missouri, Jefferson City, Mo., for appellee; Norman H. Anderson, Atty. Gen., Jr., Jefferson City, Mo., was on the brief.

1. " § 560.120. Robbery in first degree
 "Every person who shall be convicted of feloniously taking the property of another from his person, or in his presence, and against his will, by violence to his person, or by putting him in fear of some immediate injury to his person * * * shall be adjudged guilty of robbery in the first degree."

2. "§ 560.135. Robbery by means of dangerous and deadly weapons—penalty

 "Every person convicted of robbery in the first degree by means of a dangerous and deadly weapon shall suffer death, or be punished by imprisonment in the penitentiary for not less than five years, and every person convicted of robbery in the first degree by any other means shall be punished by imprisonment in the penitentiary for not less than five years * * * "

As grounds for his federal habeas petition Ashe asserts double jeopardy and absence of due process, in violation of his Fifth and Fourteenth Amendment rights,[3] by reason of a second prosecution after an initial acquittal upon what he claims to be a charge of a single offense. The matter was submitted to the district court on a stipulation and accompanying exhibits. Judge Oliver denied relief but issued the certificate of probable cause required by 28 U.S.C. § 2253.

The issue arises out of what Ashe's brief refers to as "a friendly game of poker" engaged in by six men until the early hours of January 10, 1960, at a private home in Lee's Summit, Missouri. The facts, which really are not in dispute here, are set forth in the opinion of the Supreme Court of Missouri in State v. Ashe, 350 S.W.2d 768, 769 (Mo.1961).[4] The home was that of John Gladson. Gladson and five others, namely, Donald Knight, Jerry Freeman, Orville Goodman, Richard McClendon, and Ray Roberts were playing poker in the basement. Mrs. Gladson was at home but in bed upstairs. A substantial amount in currency and checks was on the poker table. Three men broke into the basement. They were armed with a shotgun and pistols. The players, other than Gladson (the men seemed to know that he had a heart condition), were ordered to remove their trousers and were tied up. The men took items from the table and also took money, rings, watches, and other things from the persons of the players. A man also entered Mrs. Gladson's bedroom, ripped out the telephone there, tied her with the telephone cord, and removed the wedding ring from her finger.

Ashe and John Edward Johnson, Eric Larson and Thomas Brown were all apprehended later that morning. Seven complaints were lodged against each of the four in magistrate court. These charged, respectively, the robbery of each of the six victims and the theft of an automobile belonging to Roberts. On a preliminary hearing all four were bound over to the circuit court for trial. Later seven separate informations were filed. Six of these named Ashe, Larson and Johnson; a seventh, for the car theft, named all four. Another set of six informations was filed against Brown alone.

On May 2, 1960, Ashe went separately to trial before a jury in Jackson County, Missouri, Circuit Court on the charge that he robbed Donald Knight. Four of the six victims (Gladson, Knight, McClendon and Roberts) testified about the event and described their individual losses. The defense offered no testimony and even waived closing argument. The jury returned a verdict of "not guilty due to insufficient evidence".[5]

On June 20, 1960, Ashe, with different counsel, went to trial before a jury in the same state court and before the same judge on the charge that he robbed Ray Roberts. Three of the victims (Knight, Gladson and Roberts) testified at this trial as did Mrs. Gladson who, apparently because of illness, had not appeared as a witness at the first trial. On the Roberts charge the jury returned a verdict of guilty.

Ashe appealed his conviction to the Supreme Court of Missouri. It was affirmed. State v. Ashe, supra, 350 S.W.2d 768 (Mo.1961). The court cited,

---

3. The Constitution of Missouri, V.A.M.S. Const. art. 1, § 19, also provides:
 "That no person shall be compelled to testify aaginst himself in a criminal cause, nor shall any person be put again in jeopardy of life or liberty for the same offense, after being once acquitted by a jury * * *"

4. See, also, State v. Johnson, 347 S.W.2d 220, 221–222 (Mo.1961).

5. It is stipulated that Johnson was convicted on April 25, 1960, in a separate trial, for the robbery of Knight, and that Larson was convicted on or about May 18, 1960, in a separate trial, also for the robbery of Knight. Brown, in the course of his separate trial on one of the charges against him, pleaded guilty. Johnson's conviction was affirmed on appeal. State v. Johnson, supra, 347 S.W.2d 220 (Mo.1961).

among other cases, Hoag v. New Jersey, supra.

Four years later Ashe, pursuant to Rule 27.26 of the Missouri Rules of Criminal Procedure, V.A.M.R., moved to vacate his sentence. This motion was denied by the state circuit court. On appeal, with his present retained counsel, the denial was affirmed. State v. Ashe, 403 S.W.2d 589 (Mo.1966). The court again mentioned Hoag v. New Jersey.

Ashe then filed his habeas petition with the United States District Court for the Western District of Missouri.

Prior to his state trial on the charge of robbing Knight, Ashe unsuccessfully moved to quash on the ground of multiplicity of charges. After his acquittal on the Knight charge he unsuccessfully moved to dismiss the other charges filed against him on the ground of double jeopardy. Double jeopardy was asserted on the appeal from his conviction—and apparently was the only issue seriously asserted on that appeal—but the claim was held to be without merit. Pp. 769–771 of 350 S.W.2d. Double jeopardy was also asserted on Ashe's appeal from the denial of his motion to vacate sentence. Pp. 590–591 of 403 S.W.2d. Clearly, therefore, as the State has conceded, any requirement under 28 U.S.C. § 2254 that state remedies be exhausted before applying for federal habeas relief has been satisfied by Ashe.

In Hoag v. New Jersey, supra, three indictments were returned against Hoag charging that, with two others, he robbed three persons at a tavern. Two other victims of the robbery, one of them named Yager, were not named in the indictments. The three indictments were joined for trial. The state's witnesses were the five victims. Only Yager, however, positively identified Hoag as one of the robbers. Hoag was the sole defense witness. He testified to an alibi. The jury acquitted. Six weeks later a fourth indictment was returned. This named Yager as the robbery victim. At the trial on this indictment only Yager testified for the prosecution. The defense called the other four victims. They testified either that Hoag was not one of the robbers or that positive identification was not possible. Hoag repeated his alibi. This time the jury returned a verdict of guilty. The conviction was affirmed on appeal by the New Jersey courts, State v. Hoag, 35 N.J.Super. 555, 114 A.2d 573; 21 N.J. 496, 122 A.2d 628.

The Supreme Court majority refused, on that record, to hold that Hoag's second prosecution and conviction violated due process.[6] They noted that the New Jersey courts, in construing the state's robbery statute, made "each of the four robberies, though taking place on the same occasion, a separate offense" and thus rejected Hoag's claim that the double jeopardy clause of the State Constitution was violated. "Certainly nothing in the Due

---

**6.** It is suggested in Ashe's brief that Palko v. State of Connecticut, 302 U.S. 319, 322–328, 58 S.Ct. 149, 82 L.Ed. 288 (1937), where, in an opinion written by Mr. Justice Cardozo, with Mr. Justice Butler alone dissenting and without opinion, the double jeopardy clause of the Fifth Amendment was held not to be applicable, by force of the Fourteenth, to state action, is a holding questionable today. Ashe cites the dissents in Bartkus v. People of State of Illinois, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), and the incipience of the issue in Cichos v. State of Indiana, 385 U.S. 76, 87 S.Ct. 271, 17 L.Ed.2d 175 (1966).

We are aware, of course, of the announced differences among the Justices of the Supreme Court in their approach-

es to the Fourteenth Amendment-Bill of Rights relationship, perhaps exemplified, on the one hand, by what has been described as an approach based on "incorporation" and, on the other, by an approach which takes as its measure "requirements of fundamental fairness 'implicit in the concept of ordered liberty'". See the several opinions in Pointer v. State of Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), and in Duncan v. State of Louisiana, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). If the Court chooses to review Ashe's case on certiorari, it will face the issue whether this distinction makes a difference and, if so, which route to follow.

Process Clause prevented the State from making that construction". P. 467, of 356 U.S. p. 832 of 78 S.Ct. The Court went on to say:

"We do not think that the Fourteenth Amendment always forbids States to prosecute different offenses at consecutive trials even though they arise out of the same occurrence. The question in any given case is whether such a course has led to fundamental unfairness. * * * [I]t has long been recognized as the very essence of our federalism that the States should have the widest latitude in the administration of their own systems of criminal justice. * * * In the last analysis, a determination whether an impermissible use of multiple trials has taken place cannot be based on any overall formula. * * *

"Petitioner further contends that his conviction was constitutionally barred by 'collateral estoppel.' His position is that because the sole disputed issue in the earlier trial related to his identification as a participant in the Gay's Tavern robberies, the verdict of acquittal there must necessarily be taken as having resolved that issue in his favor. * * * Although the rule was originally developed in connection with civil litigation, it has been widely employed in criminal cases in both state and federal courts. * * *

"Despite its wide employment, we entertain grave doubts whether collateral estoppel can be regarded as a constitutional requirement. Certainly this Court has never so held. However, we need not decide that question, for in this case New Jersey both recognized the rule of collateral estoppel and considered its applicability to the facts of this case. * * * In numerous criminal cases both state and federal courts have declined to apply collateral estoppel because it was not possible to determine with certainty which issues were decided by the former general verdict of acquittal." Pp. 467–472 of 356 U.S., pp. 832–835 of 78 S.Ct.

The Chief Justice dissented, asserting that the issue is whether what happens was contrary to the requirements of fair procedure guaranteed by the due process clause. He concluded that it was, and that a suggestion made by the majority that the jury might have acquitted at the first trial because of a failure of proof that property was taken from the victims "is simply unrealistic". Pp. 473–477, 78 S.Ct. pp. 835–837. Mr. Justice Douglas, joined by Mr. Justice Black, dissented on the ground that Hoag had been forced to run the gantlet twice. He felt that the criminal transaction was indivisible, that the basic facts canvassed were the same, and emphasized that the alibi was tendered once again and that the testimony of the same witness identifying the petitioner was introduced. Pp. 477–480, 78 S.Ct. pp. 837–839.

Ciucci v. Illinois, decided the same day, was a situation where the petitioner was charged in four separate indictments with murdering his wife and three children, all of whom were found dead at the same time. In three successive trials the petitioner was found guilty of the respective murders of his wife and of two of the children. At each trial the prosecution introduced into evidence details of all four deaths. At the first two trials the jury fixed the punishment at imprisonment for a number of years. At the third trial the penalty imposed was death. It was conceded that under state law each of the murders, although apparently taking place at the same time, constituted a separate crime and it was undisputed that evidence of the entire occurrence was relevant in each of the three prosecutions. In a per curiam opinion the five justices constituting the majority agreed that upon the record as it stood no violation of due process had been shown. Hoag v. New Jersey was cited. Mr. Justice Douglas, joined by the Chief Justice and Mr. Justice Brennan, dissented, stated that the case was an instance of the prosecution's being allowed to harass the accused with repeated trials and convictions on the same evidence "until it achieves its desired result of a capital verdict". In

his view due process prevented this. Pp. 573–575, p. 840–841 of 78 S.Ct. Mr. Justice Black concurred in the dissent on the ground that the Fourteenth Amendment bars a state from placing a defendant twice in jeopardy for the same offense. P. 575, 78 S.Ct. p. 841.

At this point we note that the Supreme Court of Missouri on Ashe's direct appeal aligned itself, with no dissent, with what it called "an overwhelming weight of authority" and held that where an accused robs two or more persons at the same time a prosecution for one of the robberies does not prevent a subsequent prosecution for another. P. 770 of 350 S.W.2d. It observed that "the ultimate and main issue in the first case was" whether Ashe robbed Knight and that the vital issue in the second case was whether Ashe robbed Roberts. It stated that the two verdicts were not necessarily inconsistent. It referred to the doctrine of collateral estoppel and seemingly refused to apply it, noting the New Jersey court's statement, also noted by the Supreme Court, p. 467 of 356 U.S., footnote 3, expressing confidence that prosecutors "will not resort unfairly to multiple indictments and successive trials in order to accomplish indirectly that which the constitutional interdiction precludes". See, also, State v. Whitley, 382 S.W.2d 665, 667–668 (Mo.1964), where the Missouri court cited its holding in *Ashe* and rejected any suggestion as to a contrary implication in the earlier case of State v. Citius, 331 Mo. 605, 56 S.W.2d 72 (1932). The Missouri court, therefore, just as did the New Jersey court in *Hoag*, made "each of the * * * robberies, though taking place on the same occasion, a separate offense", to use Mr. Justice Harlan's words, p. 467 of 356 U.S., p. 832 of 78 S.Ct.

 We feel compelled to affirm the district court's denial of habeas relief because:

1. This court is not the Supreme Court of the United States. We therefore are not free to disregard an existing fiat and still live holding of the Supreme Court even though that holding is one by a sharply divided tribunal and even though only one of the Justices who participated in the majority decision remains active. A change in constitutional concept and the overruling of an existing decision, if indicated at all, is for the Supreme Court and is not for us. Firmness of precedent otherwise could not exist. Further, we deal here with no mere implication or interpretation of language. We are confronted with a specific holding. In this connection we note that, although certiorari apparently was not applied for after the Missouri affirmance on November 13, 1961, on Ashe's direct appeal from the conviction, the membership of the Supreme Court at that time had changed only by Mr. Justice Stewart's succeeding Mr. Justice Burton; the extensive change in membership has taken place only since the time certiorari could have been sought.

2. The state prosecutions of Ashe were for robberies, not for larceny. We note that the Missouri statute, § 560.120, is directed to the felonious taking, by violence or putting in fear of immediate personal injury, of "the property of another from his person, or in his presence", and thus places emphasis on the individual victim.

3. There is no dispute that the criminal action concerned more than the taking of currency and checks from the gaming table. If the evidence were confined to those table items, we might well be dealing with a single offense.

4. A robbery of one man (Roberts) ordinarily requires proof of facts different from those required to prove a robbery of another man (Knight). This is so even though Roberts and Knight are held up and robbed at about the same time. The items taken from Roberts' person are different than the items taken from Knight's person and the personal indignities inflicted on the respective victims are not the same. See the comments on the "same evidence" test in Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), and Mr. Justice Brennan's addi-

tional opinion in Abbate v. United States, 359 U.S. 187, 196, 79 S.Ct. 666, 3 L.Ed. 2d 729 (1959).

5. If, as the Supreme Court said in *Hoag*, p. 467 of 356 U.S., p. 832 of 78 S. Ct., "The question in any given case is whether such a course has led to fundamental unfairness", then we are led to conclude that the answer to that question here is in the negative. We see nothing so fundamentally unfair as to be of constitutional dimensions. Of course, an all night poker game, with stakes apparently more substantial than those betting them could reasonably afford, may be something less than an enterprise most deserving of protection. But those present in a private home deserve protection, too, against criminal invasion of that home at night at gunpoint. There were multiple participants here and there were multiple victims. Each victim was subjected to abuse. Each was deprived of property on his person. Under the circumstances, to regard the offense against each as a separate and distinct crime and not as a mere part or segment of one overall crime seems to us neither illogical, unfair, or contrary to fact. It strikes us as no more illogical or unfair than inconsistency of verdict on an indictment's several counts. And, as to that, Mr. Justice Holmes reminds us, "Consistency in the verdict is not necessary". Dunn v. United States, 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932). This court has recognized that observation. Koolish v. United States, 340 F.2d 513, 525–526 (8 Cir. 1965), cert. denied 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724; Canaday v. United States, 354 F.2d 849, 855 (8 Cir. 1966).

6. The acquittal at the first trial, on the charge of robbing Knight, was, the jury said, "due to insufficient evidence". Although we have carefully read the transcripts of both state trials, we have no way of translating or interpreting that jury comment with certainty. Was it made because the jury had a reasonable doubt due to disbelief of certain witnesses, or because of gaps, real or imagined, in the evidence, or because of a paucity of evidence as to Knight's personal loss, or because of some reservation about Ashe's identity or participation? We do not know. The mere listing of these possibilities lends emphasis to the fact that the first trial concerned Knight and that those several possibilities assume importance with respect to the Knight charge. The Roberts charge is something else.

7. Ashe's case, we feel, is stronger factually for the prosecution than Hoag's. The positive evidence here is consistent. In *Hoag* there was some positive denial of identification.

It usually is difficult for a lower federal court to forecast with assurance a Supreme Court decision as to the continuing validity of a holding of a decade ago by a Court then divided as closely as possible. This is particularly so when the decision is in the rapidly developing and sensitive area of the criminal law and the Fourteeth Amendment Bill of Rights relationship. We feel, however, that our task is not to forecast but to follow those dictates, despite their closeness of decision, which at this moment in time are on the books and for us to read. Hoag v. New Jersey and Ciucci v. Illinois are among these. See the comments of Judge Mehaffy, in speaking for this court, in Ferina v. United States, 340 F.2d 837, 839 (8 Cir. 1965), cert. denied 381 U.S. 902, 85 S.Ct. 1446, 14 L.Ed.2d 284. In the light of the commands of *Hoag* and *Ciucci*, we affirm Judge Oliver's decision denying habeas relief to Ashe.