**NORTHERN VIRGINIA REGIONAL PARK AUTHORITY, and William M. Lightsey, Appellants,**

v.

**UNITED STATES CIVIL SERVICE COMMISSION, Robert E. Hampton, James E. Johnson and Ludwig J. Andolsek, Commissioners, Appellees.**

No. 14559.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 9, 1970.

Decided Feb. 19, 1971.

Edmund D. Campbell, Washington, D. C. (Stuyvesant K. Bearns, Washington, D. C., on the brief), for appellants.

Raymond D. Battochi, Atty., Department of Justice (William D. Ruckelshaus, Asst. Atty. Gen., Alan S. Rosenthal and Patricia S. Baptiste, Attys., Department of Justice, and Brian P. Gettings, U. S. Atty., on the brief), for appellees.

Before SOBELOFF,* WINTER and CRAVEN, Circuit Judges.

* Judge Sobeloff attained the status of Senior Circuit Judge on December 31, 1970.

SOBELOFF, Senior Circuit Judge:

This case involves the constitutionality of a provision of the Hatch Act that prohibits employees of federally funded state agencies from engaging in partisan political activity, 5 U.S.C. § 1502(a) (3).[1] Also at issue is the construction of an exemption contained in the Act, 5 U.S.C. § 1502(c) (4),[2] which excludes certain designated officials employed by such federally funded agencies from the bar against active participation in partisan politics. We shall make a brief summary of the factual background of this case before entering upon a consideration of these legal issues.

## I. THE FACTS

The Northern Virginia Regional Park Authority is a state agency organized by the City of Falls Church and the Counties of Arlington and Fairfax for the purpose of developing and maintaining a system of regional parks. From 1962 to 1967, the Park Authority received grants from the Department of Housing and Urban Development under the Open Space Land Program, 42 U.S.C. § 1500 et seq. William M. Lightsey, as Executive Director of the Park Authority since 1963, has had overall responsibility for the supervision of a fourteen-man staff and for the execution of the policies formulated by an eight-man governing body.

In November 1965, Lightsey ran and was elected on the Democratic ticket to represent Arlington County in the Virginia House of Delegates. Shortly thereafter, the General Counsel of the United States Civil Service Commission received a complaint alleging that Lightsey had violated the Hatch Act by actively participating in political campaigns while principally employed in connection with a federally financed activity. The General Counsel dismissed the complaint based on misinformation supplied him by the Department of Housing and Urban Development that no federal grants had been made to the Park Authority during the years 1965 and 1966. The General Counsel informed Lightsey that when the Park Authority did receive grants under then-pending applications, he would be required to refrain from engaging in partisan political activity, and

1. Title 5 U.S.C. § 1502(a) (3) provides:
 (a) A State or local officer or employee may not—
 (3) take an active part in political management or in political campaigns.
 Title 5 U.S.C. § 1501(4) and (5) provide:
 For the purpose of this chapter—
 (4) "State or local officer or employee" means an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency, but does not include—
 (A) an individual who exercises no functions in connection with that activity; or
 (B) an individual employed by an educational or research institution, establishment, agency, or system which is supported in whole or in part by a State or political subdivision thereof, or by a recognized religious, phil-

anthropic, or cultural organization; and
 (5) the phrase "an active part in political management or in political campaigns" means those acts of political management or political campaigning which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President.

2. The full text of the exemption, 5 U.S.C. § 1502(c), reads:
 (c) Subsection (a) (3) of this section does not apply to—
 (1) the Governor or Lieutenant Governor of a State or an individual authorized by law to act as Governor;
 (2) the mayor of a city;
 (3) a duly elected head of an executive department of a State or municipality who is not classified under a State or municipal merit or civil-service system; or
 (4) an individual holding elective office.

specifically from running for reelection to the Virginia House of Delegates in 1967.

Despite this warning, Lightsey actively and successfully campaigned for reelection from July 11, 1967, to November 8, 1967. On April 10, 1968, the Civil Service Commission initiated administrative proceedings against Lightsey, and by order of May 8, 1969, concluded that Lightsey had knowingly violated the Hatch Act by actively campaigning in the Democratic primary and in the general election of 1967 for the Virginia House of Delegates while still principally employed by the Park Authority. The Commission determined that this violation warranted Lightsey's removal from his position with the Park Authority. When that agency refused to terminate Lightsey's employment, the Commission directed the Department of Housing and Urban Development to deduct the sum of $26,400, an amount equal to two years of Lightsey's compensation, from loans or grants which would otherwise be paid or certified to the Northern Virginia Regional Park Authority. The amount of the penalty accords with the formula prescribed in 5 U.S.C. § 1506.

William Lightsey and the Park Authority brought suit in the District Court under 5 U.S.C. § 1508 seeking a review of the Commission's action. The District Court granted the Government's motion for summary judgment, sustaining the order of the Commission.

The plaintiffs base their appeal from the District Court's decision on two grounds: (1) they allege that 5 U.S.C. § 1502(a) (3) of the Hatch Act is unconstitutional as an infringement of the First Amendment rights of employees of state agencies which receive federal funds; (2) they also urge that even if 5 U.S.C. § 1502(a) (3) is constitutional, Lightsey is exempted from the coverage of that section by 5 U.S.C. § 1502(c) (4) since he was "an individual holding elective office" at the time of the offense with which he was charged.

## II. THE CONSTITUTIONALITY OF 5 U.S.C. § 1502(a) (3)

In Oklahoma v. United States Civil Service Commission, 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947), the Supreme Court in a 5–2 decision upheld the constitutionality of 5 U.S.C. § 1502 (a) (3), the section under attack here. The primary constitutional challenge advanced by the state of Oklahoma was that the Hatch Act, insofar as it attempted to regulate the internal affairs of a state, invaded its sovereignty in violation of the Tenth Amendment to the Constitution. Although the majority of the Court in *Oklahoma* did not specifically discuss the First Amendment issues which are raised so forcefully in this appeal, they noted that in the companion case of United Public Workers v. Mitchell, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947), decided the same day, the Court had sustained against First Amendment challenges an analogous provision of the Hatch Act forbidding *federal employees* in the Executive Branch from engaging in partisan political activity, 5 U.S.C. § 7324(a) (2). Both provisions, the Court emphasized, were designed to achieve "better public service by requiring those who administer funds for national needs to abstain from active political partisanship." *Oklahoma, supra,* 330 U.S. at 143, 67 S.Ct. at 553.

 Justice Black dissented in *Mitchell* and *Oklahoma,* arguing vigorously that the political activity sections of the Hatch Act were unconstitutional. He underscored that millions of state and federal employees "can take no really effective part in campaigns that may bring about changes in their lives, their fortunes, and their happiness" merely because they are paid out of the public treasury. *Mitchell, supra,* 330 U.S. at 107, 67 S.Ct. at 573. The dissenting Justice objected to the vagueness of the statutory prohibitions and the indiscriminately broad class of employees covered by the Act, for it encompassed those whose political involvement posed

no direct or indirect threat of corrupting governmental operations or undermining public confidence in the integrity of the federal or state apparatus.[3] He contended that

"laws which restrict the liberties guaranteed by the First Amendment should be narrowly drawn to meet the evil aimed at and to affect only the minimum number of people imperatively necessary to prevent a grave and imminent danger to the public." *Id.* at 110, 67 S.Ct. at 574.

The appellants in this case assert that a series of Supreme Court opinions since 1947 have undermined the rationale of *Mitchell* and *Oklahoma,* and these decisions should no longer be followed. They point out that the Court in *Mitchell* applied a "reasonable basis" test in evaluating First Amendment issues. It was sufficient, according to this test, that Congress could "reasonably" find that political activity by the covered employees interfered with the efficiency and integrity of the public service. The appellants emphasize that standards for reviewing statutes abridging the exercise of First Amendment freedoms have changed dramatically since 1947, and that statutes are now subjected to closer judicial scrutiny to determine whether the interests of the Government are compelling, and whether the objectives of the legislation can be accomplished by narrower, less drastic means. *See* United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Aptheker v. Secretary of State, 378 U.S. 500, 84 S.Ct. 1659, 12 L.Ed.2d 992 (1964); Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Shelton v. Tucker, 364 U.S. 479, 81 S.Ct. 247, 5 L.Ed.2d 231 (1960). According to the appellants, the Hatch Act cannot survive contemporary review under these more rigorous constitutional standards. Their position, in brief, is that Justice Black's dissent in *Mitchell* reflects the now prevailing viewpoint of the Supreme Court.[4]

3. 5 U.S.C. § 1501(5) designates the political activities proscribed by the Hatch Act as "those acts * * * which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission * * *." These prior prohibitions number more than 3000, forbidding among other activities: taking any part in a political meeting; taking an active part in the affairs of a political club; writing for publication or publishing any letter or article, signed or unsigned, in favor of or against any political party, candidate, or faction; and expressing an opinion in such a way as to constitute taking an active part in political management or in political campaigns. Moreover, employees are accountable for political activity by persons other than themselves, including wives and husbands, if in fact such activity can be traced to the employee. *See* Rose, A Critical Look at the Hatch Act, 75 Harv.L.Rev. 510 (1962).

The Supreme Court in *Mitchell* declined to examine the validity of the definition of political activity, since the complainant's conduct in that case clearly fell within the language of the statute. It is clear that Lightsey's activity as a Democratic candidate for the state legislature likewise plainly falls within the proscription of taking "an active part in * * * political campaigns." Like the Court in *Mitchell,* we do not pass upon the constitutionality of the other activities prohibited by the Commission's rules and incorporated into the statute.

4. Our attention is called to a number of recent state court decisions which have declared unconstitutional provisions of "little Hatch Acts" broadly proscribing political activity by state employees. Huerta v. Flood, 103 Ariz. 608, 447 P.2d 866 (1968); Rosenfield v. Malcolm, 65 Cal.2d 559, 55 Cal.Rptr. 505, 421 P.2d 697 (1967); Bagley v. Washington Township Hosp. Dist., 65 Cal.2d 499, 55 Cal.Rptr. 401, 421 P.2d 409 (1966); Minielly v. State, 242 Or. 490, 411 P.2d 69 (1966); Fort v. Civil Service Commission, 61 Cal.2d 331, 38 Cal.Rptr. 625, 392 P.2d 385 (1964).

The appellants cite *Robel* as a prime example of the new constitutional approach. In that case the Court held unconstitutional a section of the Subversive Activities Control Act which barred all members of Communist-action organizations from employment in defense facilities. The Government urged that the purpose of the section was eminently reasonable—to reduce the threat of sabotage and espionage in the nation's defense plants. The Court held, however, that although the government interest in such a prophylactic measure was substantial, the Constitution could not tolerate a broadside prohibition of all Communists from defense facilities regardless of the nature and extent of their activity in the Communist Party, the existence of any intent to further its unlawful aims, or the sensitivity of the position held in the defense establishment. The Court emphasized that Congress must achieve its legitimate goals through legislation having a "less drastic" impact on the exercise of First Amendment freedoms. The appellants in this case argue that by a parity of reasoning, Congress must limit its curtailment of political activity to employees holding "sensitive" government positions and whose activity in partisan politics is substantial.

 We acknowledge the considerable weight of these arguments. Nevertheless, we feel obliged to regard *Mitchell* and *Oklahoma* as binding precedent on this lower federal tribunal. This court has previously observed that

[r]arely would a Court of Appeals be justified in declaring devitalized and

no longer to be followed a Supreme Court decision passing directly on the precise point at issue, because of another decision of the Supreme Court in a related, though different area. The resolution of possible inconsistencies in the Supreme Court's decisions is ordinarily not the prerogative of inferior courts. Blalock v. United States, 247 F.2d 615, 621 (4th Cir. 1957).

*See also* United States v. Longfellow, 406 F.2d 415 (4th Cir. (1969); cert. denied, 394 U.S. 998, 89 S.Ct. 1594, 22 L.Ed.2d 776 (1969); Ashe v. Swenson, 399 F.2d 40 (8th Cir. 1968), rev'd, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970). In *Ashe, supra,* Judge (now Justice) Blackmun emphasized:

This court is not the Supreme Court of the United States. We therefore are not free to disregard an existing fiat and still live holding of the Supreme Court even though that holding is one by a sharply divided tribunal * * *. A change in constitutional concept and the overruling of an existing decision, if indicated at all, is for the Supreme Court and is not for us. Firmness of precedent otherwise could not exist. Further, we deal here with no mere implication or interpretation of language. We are confronted with a specific holding. *Id.* 399 F.2d at 45.

In the case at hand, the appellants have cited no Supreme Court case since 1947 dealing specifically either with the Hatch Act or other federal or state legislation involving the identical issue that would

---

In *Bagley*, the California Supreme Court suggested the following formulation of a test for reviewing statutes imposing conditions on public employment which abridge First Amendment freedoms:

Not only must the conditions annexed to the enjoyment of a publicly-conferred benefit reasonably tend to further the purposes sought by conferment of that benefit but also the utility of imposing the conditions must manifestly outweigh any resulting impairment of

constitutional rights. Further, in imposing conditions upon the enjoyment of publicly-conferred benefits, as in the restriction of constitutional rights by more direct means, the state must establish the unavailability of less offensive alternatives and demonstrate that the conditions are drawn with narrow specificity, restricting the exercise of constitutional rights only to the extent necessary to maintain the integrity of the program which confers the benefits. 55 Cal.Rptr. at 407, 421 P.2d at 415.

justify this court in contradicting the controlling Supreme Court authorities. It is highly relevant that other federal courts have in recent adjudications felt similarly constrained by the decisions of *Mitchell* and *Oklahoma* when constitutional challenges to the Hatch Act have been presented on essentially the same grounds urged here. Fishkin v. United States Civil Service Commission, 309 F. Supp. 40 (N.D.Calif.1969), appeal dismissed, 396 U.S. 278, 90 S.Ct. 557, 24 L.Ed.2d 463 (1970) ; [5] Kearney v. Macy, 409 F.2d 847 (9th Cir. 1969), cert: denied, 397 U.S. 943, 90 S.Ct. 958, 25 L.Ed. 2d 124 (1970) ; Engelhardt v. United States Civil Service Commission, 304 F. 2d 882 (5th Cir. 1962), aff'g, 197 F. Supp. 806 (M.D.Ala.1961) ; Palmer v. United States Civil Service Commission, 297 F.2d 450 (7th Cir. 1961), cert. denied, 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed. 2d 8 (1962). Conceivably, if the Supreme Court were to make a fresh evaluation of the constitutionality of the Hatch Act today, it might depart from the result it reached in 1947. Our holding is dictated, however, by our duty to give effect to an existing Supreme Court ruling on the precise issue before us. *Mitchell* and *Oklahoma* do not speak merely in the general area of First Amendment rights, from which one would be left to infer what the Court would think about the constitutionality of the Hatch Act. These two cases speak plainly and directly to the validity of the Hatch Act itself, leaving *nothing to in-ference or speculation.*

III. THE EXEMPTION OF 5 U.S.C.
§ 1502(c) (4)

 5 U.S.C. § 1502(c) (4) exempts "an individual holding elective office" from the coverage of 5 U.S.C. § 1502(a) (3), discussed above. The ap-

pellants contend that Lightsey was "holding [the] elective office" of Delegate to the Virginia House of Delegates when he campaigned for reelection in 1967, and was therefore not in violation of the Act.

The appellants' argument cannot withstand close scrutiny, for it depends upon reading the exemption out of the context in which it occurs, and requires us to ignore the legislative history of the Hatch Act. The Third Circuit considered precisely this question in In re Higginbotham, 340 F.2d 165, cert. denied, Higginbotham v. United States Civil Service Commission, 382 U.S. 853, 86 S.Ct. 101, 15 L.Ed.2d 91 (1965). In that case a local Democratic alderman, employed on a full time basis by a federally funded local housing authority, ran for reelection. He defended his candidacy on the same ground advanced by Lightsey in this case, namely, that he was exempt as an elective office-holder. The Third Circuit squarely rejected this interpretation of the exemption contained in 5 U.S.C. § 1502(c), as do we.

The legislative purpose of the subsection was to exempt a small but important number of elected state officers and employees whose official duties in their elective positions involve the administration of federally assisted projects. Thus 5 U.S.C. § 1502(c) exempts Governors, Lieutenant Governors, Mayors, elected heads of executive departments, and "individual[s] holding elective office." This last clause was designed to encompass a residual category of state officers, such as an elected state highway commissioner for example, whose elective position includes responsibility for federally funded programs. It was far from the purpose of the exemptive provision to tolerate political activity by an employee of an agency administering federal funds

---

5. *Fishkin* was dismissed on the ground that the appeal was not filed within the time prescribed by the Rules of the

Supreme Court. Justices Black and Douglas thought that probable jurisdiction should be noted.

merely because he happens to have been elected to an entirely unrelated office.

Other sections of the Hatch Act confirm this interpretation of 5 U.S.C. § 1502(c) (4). When the Hatch Act was originally adopted it contained a section 17 (later dropped in 1948 as obviously unnecessary) that allowed any employee covered by the Act, who had been nominated for any public office before the Act became law, to retain his position with the agency and continue to run for office, provided that if he were elected to the public office he would resign from the government agency. If the appellants' construction of the exemption were accepted, section 17 of the original Hatch Act would have been anomalous. Why would Congress have required the employee to resign, if 5 U.S.C. § 1502(c) (4), as the appellants maintain, exempted the employee altogether from the prohibition against political activity?

The appellants' construction is also inconsistent with the legislative design of 5 U.S.C. § 1503 which permits state employees subject to the Act to engage in *nonpartisan* political activity, and even to run for elective offices provided those offices and activities are strictly local in nature and completely unrelated to issues and candidates that are identified with national or state political parties. The prime example of such a permissible activity might be running for a nonpartisan local school board. According to the appellants' interpretation, such holders of nonpartisan elective offices would thereafter be free to take part in partisan political campaigns since they would be "individual[s] holding elective office[s]." That result unquestionably would do violence to the congressional intent underlying 5 U.S.C. § 1503 to allow government employees to participate only in nonpartisan local affairs.

For the reasons stated in this opinion, the judgment of the District Court is

Affirmed.