272 So.2d 805 (1973)
James Russell SWINNEY, III, Individually and On Behalf of a Class of Persons Known As the Civil Service Employees of Escambia County, Florida, Appellants,
v.
Royal J. UNTREINER, Sheriff of Escambia County, Florida, et al., Appellees.
No. 42594.
Supreme Court of Florida.
January 22, 1973.
Rehearing Denied February 28, 1973.
Paul Shimek, Jr., Pensacola, for appellants.
Hobart O. Worley, Jr., Pensacola, for Civil Service Board.
Richard H. Merritt, Pensacola, for Sheriff Royal J. Untreiner.
BOYD, Justice.
This cause is before us on appeal from the Circuit Court, Escambia County. The trial court in its final judgment passed on the validity of §§ 18 and 23 of Chapter 67-1370, Laws of Florida, 1967, the Escambia County Civil Service Act, giving this Court jurisdiction of the direct appeal under § 4 of Article V of the Florida Constitution, F.S.A. The pertinent sections of the Act are as follows:
Section 23: "No person holding an office or place in the classified service under the provisions of this act shall seek elective public office, or serve in any elective or appointive position in any political party, or take an active part in any political campaign, or serve as an officer or a member of a committee of any political club or organization, or circulate or seek signatures to any petition provided for in any primary or election law or act as a worker at the polls, or distribute badges, colors, or indicia favoring *806 or opposing a candidate for election or nomination to a federal, state, county or municipal public office, provided, however, that nothing in this act shall be construed to prohibit or prevent any such officer or employee from becoming or continuing to be a member of a political club or organization, or from attendance upon political meetings, or from enjoying entire freedom from all interference in casting his vote.
"Any person violating the provisions of this section shall be dismissed from the service of the county."
The constitutionality of the foregoing statute was upheld by the trial court against the contentions of appellants that it was overbroad, thereby "exerting a chilling effect" on the exercise of fundamental rights. Appellants also contend that the Act is invalid because vague and uncertain in violation of due process and equal protection as guaranteed by the First and Fifth Amendments to the United States Constitution.
The other section of the Act under attack, Section 18, is as follows:
"Any person who shall willfully violate any of the provisions of this act, or of the rules of the board, shall be guilty of a misdemeanor, and shall on conviction thereof, be punished as provided by law."
The foregoing section of the Act was held unconstitutional by the trial court on the grounds that it violates Article III, § 11 of the Florida Constitution which provides:
"* * * (a) There shall be no special law or general law of local application pertaining to: ... (4) punishment for crime... ."
None of the parties to the appeal here have challenged the holding of the trial court with regard to § 18 of the Act. However, in view of the importance of this constitutional ruling, which was part of the judgment below, we have undertaken to review, and do hereby affirm, that portion of the trial court's order striking § 18 of the Act as unconstitutional.
In addition to the grounds of unconstitutionality set forth by the trial court in its opinion, which we quoted above, we note that § 18 of the Act undertakes to impose criminal sanctions for political activity. This is quite another thing from the traditional Hatch Act, which curtails political activity in Civil Service employees on penalty of being discharged from public employment. The imposition of criminal penalties goes beyond what is necessary to insure the public interest in an impartial Civil Service and infringes on the rights of the individual.
We also affirm the holding of the trial court that § 23 of the Escambia County Civil Service Act is constitutional and valid. In United Public Workers v. Mitchell,[1] the United States Supreme Court upheld the constitutionality of the Hatch Act,[2] a Federal Act prohibiting officers *807 and employees in the executive branch of the Federal Government, with certain exceptions, from taking "any active part in political management or in political campaigns." In upholding the Act, the United States Supreme Court stated:[3]
"The provisions of § 9 of the Hatch Act and the Civil Service Rule 1 are not dissimilar in purpose from the statutes against political contributions of money. The prohibitions now under discussion are directed at political contributions of energy by Government employees.
"These contributions, too, have a long background of disapproval. Congress and the President are responsible for an efficient public service. If, in their judgment, efficiency may be best obtained by prohibiting active participation by classified employees in politics as party officers or workers, we see no constitutional objection.
"Another Congress may determine that, on the whole, limitations on active political management by federal personnel are unwise. The teaching of experience has evidently led Congress to enact the Hatch Act provisions. To declare that the present supposed evils of political activity are beyond the power of Congress to redress would leave the nation impotent to deal with what many sincere men believe is a material threat to the democratic system.
"When actions of civil servants in the judgment of Congress menace the integrity and the competency of the service, legislation to forestall such danger and adequate to maintain its usefulness is required. The Hatch Act is the answer of Congress to this need. We cannot say with such a background that these restrictions are unconstitutional."
In the companion case of State of Oklahoma v. U.S. Civil Service,[4] decided the same day as Mitchell, the United States Supreme Court upheld the constitutionality of the provision under the Hatch Act that:
"No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall ... take any active part in political management or in political campaigns...."
The Mitchell and Oklahoma cases have not been overruled and the Hatch Act continues to be enforced.[5]
*808 On June 21, 1971, the United States Supreme Court denied certiorari in the case of Northern Virginia Regional Park Authority v. U.S. Civil Service Commission.[6] The opinion of the United States Court of Appeals, Fourth Circuit,[7] in that case is of particular interest because it considers and rejects the contention that the Mitchell and Oklahoma cases are no longer valid. The same contention is made by the appellants in the case before us. The Virginia Park Authority case upholds the dismissal under the Hatch Act of a state employee of a federally funded agency who campaigned for, and was re-elected to, the Virginia House of Delegates. The Court of Appeals, Fourth Circuit, in affirming the dismissal of the employee states:[8]
"The appellants in this case assert that a series of Supreme Court opinions since 1947 have undermined the rationale of Mitchell and Oklahoma, and these decisions should no longer be followed. * * * The appellants emphasize that standards for reviewing statutes abridging the exercise of First Amendment freedoms have changed dramatically since 1947, and that statutes are now subjected to closer judicial scrutiny to determine whether the interests of the Government are compelling, and whether the objectives of the legislation can be accomplished by narrower, less drastic means. * * * According to the appellants, the Hatch Act cannot survive contemporary review under these more rigorous constitutional standards. Their position, in brief, is that Justice Black's dissent in Mitchell reflects the now prevailing viewpoint of the Supreme Court.
* * * * *
"In the case at hand, the appellants have cited no Supreme Court case since 1947 dealing specifically either with the Hatch Act or other federal or state legislation involving the identical issue that would justify this court in contradicting the controlling Supreme Court authorities. It is highly relevant that other federal courts have in recent adjudications felt similarly constrained by the decisions of Mitchell and Oklahoma when constitutional challenges to the Hatch Act have been presented on essentially the same grounds urged here. * * * Conceivably, if the Supreme Court were to make a fresh evaluation of the constitutionality of the Hatch Act today, it might depart from the result it reached in 1947. Our holding is dictated, however, by our duty to give effect to an existing Supreme Court ruling on the precise issue before us. Mitchell and Oklahoma do not speak merely in the general area of First Amendment rights, from which one would be left to infer what the Court would think about the constitutionality of the Hatch Act. These two cases speak plainly and directly to the *809 validity of the Hatch Act itself, leaving nothing to inference or speculation."
The highest court of the land has had numerous opportunities since the Mitchell and Oklahoma cases in 1947 to reconsider the constitutionality of the Hatch Act. Most recently in the Virginia Regional Park Authority case, supra, the question was squarely presented and certiorari was denied.
We are aware of, but not persuaded by, decisions of other state courts[9] cited by appellants and expressing the view that the Mitchell and Oklahoma cases are outdated. We are also aware that the lower federal courts are not in complete agreement on this question.[10] The great majority of the lower federal courts,[11] however, continue to abide by the Mitchell and Oklahoma cases.
The Florida Act here in question[12] is similar in purpose but more specific in language than the Hatch Act. In National Association of Letter Carriers v. U.S. Civil Service Commission, decided July 31, 1972,[13] the United States District Court of the District of Columbia, held that Section 15 of the Hatch Act, the definitional section, was unconstitutionally vague and overbroad. That section is as follows:
"... the phrase `an active part in political management or in political campaigns' means those acts of political management or political campaigning which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under rules prescribed by the President. § 7324(a)."
In striking Section 15 of the Hatch Act, the District Court noted that the definition of "active part in political management or in political campaigns," is ambiguous because it incorporates by reference over 3,000 rulings made by the Civil Service Commission between 1886 and 1940, covering many types of conduct. As yet it is too soon to know how the National Association of Letter Carriers case, a 2-1 decision, will fare on appeal.
By comparison with the Federal Act, the Florida Statute is a masterpiece of clarity, setting out specifically the prohibited political activities. The Act under consideration also differs significantly from the Act held invalid for ambiguity in City of Miami v. Sterbenz.[14] We agree with the learned trial judge's holding in the instant case regarding the Sterbenz decision, as follows:
"The Civil Service Act in question here is more specific than that cited in the Sterbenz case, supra. The Act flatly prohibits a person in the classified services of Escambia County, Florida, from seeking public office. The balance of the prohibitions are well defined and set out in full. There should be no doubt about what constitutes prohibited political activity under the Act."
The Pendleton Act of 1883 brought into existence the non-political civil service system for employees. The system operates to protect the public, as well as governmental employees, from the "spoils system" under which public office was made the reward for political work. The same considerations prompted the adoption of the Hatch Act and its counterparts in the *810 various states.[15] The purposes of the Hatch Act prohibition against political activity by a civil service employee were considered in Fishkin v. U.S. Civil Service Commission, as follows:[16]
"The governmental interest upheld by the Court in Mitchell and Oklahoma fully apply to the facts of the present case. Fishkin's conduct could (a) undermine public confidence by inducing a public belief that the Contra Costa County Social Service Department engaged in partisan political activity and made decisions on that basis, (b) undermine the position of Fishkin's supervisor, especially regarding actions taken with respect to Fishkin, (c) undermine the morale of fellow employees by leading them to believe that their own political views might affect the quality and quantity of the services that Fishkin is supposed to provide for them,[17] and (d) lead to political pressures on Fishkin himself."
If the reasons for the existence of laws such as the one under consideration are no longer valid then the legislative branches of the Federal and State Governments should repeal them. This Court's function is to determine the constitutionality, not the wisdom or necessity, of a legislative enactment. Our conclusion that § 23, Chapter 67-1370, Laws of Florida, is constitutional is supported by the decisions of the United States Supreme Court in the Mitchell and Oklahoma cases, supra, as well as by a long line of federal decisions upholding and enforcing the Hatch Act. That Federal Act is considerably broader than the Florida Act.
Accordingly, the judgment of the trial court is affirmed.
It is so ordered.
CARLTON, C.J., and ROBERTS, ADKINS and McCAIN, JJ., concur.
ERVIN, J., dissents with opinion.
ERVIN, Justice (dissenting):
The issue in this appeal is the constitutionality of Section 23, Chapter 67-1370, Laws of Florida 1967, an act establishing the Escambia County Civil Service System. The section provides:
"No person holding an office or place in the classified service under the provisions of this act shall seek elective public office, or serve in any elective or appointive position in any political party, or take an active part in any political campaign, or serve as an officer or a member of a committee of any political club or organization, or circulate or seek signatures to any petition provided for in any primary or election law or act as a worker at the polls, or distribute badges, colors, or indicia favoring or opposing a candidate for election or nomination to a federal, state, county or municipal public office, provided, however, that nothing in this act shall be construed to prohibit or prevent any such officer or employee from becoming or continuing to be a member of a political club or organization, or from attendance upon political meetings, or from enjoying entire freedom from all interference in casting his vote.
"Any person violating the provisions of this section shall be dismissed from the service of the county."
In May 1972 Appellant Swinney, an Escambia County deputy sheriff, individually and on behalf of the County's civil service *811 employees, filed a complaint for declaratory and injunctive relief contending the section unconstitutionally abridges First Amendment rights by proscribing participation in many political activities. Specifically, Swinney said in his complaint that the section was keeping him from doing the following in that election year: running for public office, taking an active part in political campaigns and serving as a member of a committee of a political club, circulating and seeking signatures to petitions; distributing badges, colors, or other indicia favoring George C. Wallace as a candidate for election to the Presidency of the United States, and distributing badges, colors, or other indicia favoring or opposing candidates for election in county and municipal offices.
On July 19, 1972, the Escambia County Circuit Court held the section constitutional; Swinney appealed to this Court and waived oral argument. Immediately thereafter, the Sheriff suspended him and recommended to the County's Civil Service Board that he be dismissed for actively campaigning for a seat in the Florida Legislature. A month later the Civil Service Board of Escambia County ordered the dismissal, but reserved jurisdiction over the matter pending this Court's decision as to the constitutionality of Section 23.
I would reverse the trial court.
Participation in political activities is an integral part of United States citizenship. Sweezy v. New Hampshire, 1957, 354 U.S. 234, 77 S.Ct. 1203, 1 L.Ed.2d 1311; Fort v. Civil Service Comm. of County of Alameda, 1964, 61 Cal.2d 331, 38 Cal. Rptr. 625, 392 P.2d 385. It has been called "a fundamental principle of a democratic society and ... the premise upon which our form of government is based." Fort v. Civil Service Comm., supra at 38 Cal. Rptr. 627, at 392 P.2d 387. It is insured by the United States Constitution's First Amendment freedoms of speech and association, Sweezy v. New Hampshire, supra; Fort v. Civil Service Comm., supra; Minielly v. State, 1966, 242 Or. 490, 411 P.2d 69, and their counterparts in the Florida Constitution, Sections 45 and 5 of Article I. It is a broad term, encompassing such varied activities as running for public office, campaigning either for oneself or for another, discussing political issues and candidates, attending political meetings, placing bumper stickers on cars, and voting. Without it, our open and free electoral system cannot survive.
Chapter 67-1370, Section 23, Laws of Florida 1967, clearly places limitations on political participation and therefore on the First Amendment freedoms of speech and association. Such restraints are constitutionally permissible, but only if it is shown they are necessary to protect "compelling state interests." NAACP v. Button, 1963, 371 U.S. 415, 438, 83 S.Ct. 328, 9 L.Ed.2d 405; Sherbert v. Verner, 1963, 374 U.S. 398, 406, 83 S.Ct. 1790, 10 L.Ed.2d 965. Furthermore, laws limiting First Amendment freedoms must deal only with those areas in which there are compelling state interests justifying regulation; if they prohibit conduct both within and without the area of interest, they are unconstitutionally overbroad. Keyishian v. Board of Regents, 1967, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629; Mancuso v. Taft, D.C.R.I. 1972, 341 F. Supp. 574, 579.
Under the above rules, Section 23 of Chapter 67-1370, Laws of Florida 1967, is unconstitutional. Some political restraints on civil servants can be justified. We feel legitimate state interests may be protected by laws preventing government employees from campaigning during working hours, using their positions to influence or coerce others; however, we have been shown no compelling state interest necessitating a law preventing all Escambia County civil servants from taking any active part in any political campaign at any level and at any time. Section 23, as it is now written, should not stand. Compare City of Miami v. Sterbenz, Fla., 203 So.2d 4.
The trial court and the Appellees in this cause have relied upon United Public *812 Workers of America v. Mitchell, 1947, 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754, which upheld the Hatch Act's restrictions on federal employees' political activities. We feel Mitchell has been superseded by the more thoughtful rationale of subsequent decisions of the Supreme Court of the United States regarding regulation of First Amendment rights. Others share this conclusion. Minielly v. State, supra; Bagley v. Washington Township Hospital District, 1966, 65 Cal.2d 499, 55 Cal. Rptr. 401, 421 P.2d 409; Fort v. Civil Service Comm. of County of Alameda, supra; Kinnear v. City and County of San Francisco, 1964, 61 Cal.2d 341, 38 Cal. Rptr. 631, 392 P.2d 391; Mancuso v. Taft, supra; DeStefano v. Wilson, Super.Ct. 1967, 96 N.J. Super. 592, 233 A.2d 682; National Association of Letter Carriers, AFL-CIO v. United States Civil Service Commission, D.C.D.C., 346 F. Supp. 578, opinion filed July 31, 1972; Gray v. Hillsborough County, Fla., 13th Cir., case No. 204302, ordered filed June 6, 1972.
In holding Section 23 unconstitutional and Mitchell no longer viable, we should expressly overrule Jones v. Board of Control, Fla. 1961, 131 So.2d 713, where we held constitutional a rule of the Board of Control of the University of Florida prohibiting employees of the University from running for public office. Jones, which relied in part upon Mitchell, was rendered prior to the Supreme Court of the United States landmark First Amendment cases of the 1960's and 1970's. In light of those decisions, Jones should no longer stand.
Public employees in the various hierarchies of bureaucratic employment of the federal and state governments ought not to be classed as political eunuchs sterilized from common political privileges by Hatch Acts, big or little. There is small reason to treat them differently from other citizens in businesses or professions or holding elective office. They should not be regarded as sheep in political pastures too tender and innocent to engage in democratic processes. As part-citizens they are not allowed to break out of the bureaucratic fold and enjoy full political rights. The present restrictive acts stifle public employees' political ambitions and keep them below the political surface in hierarchal bureaucratic catacombs, unable for the most part to escalate to levels of their highest public competence.
There may be good reasons for legally preventing public employees from being interfered with or coerced by their superiors in the enjoyment of political rights; but there are no logical compelling state interests or reasons for barring public employees from the fundamental rights other citizens enjoy in legitimate political activities. A public employee might be guilty of neglect of his regular public employment duties because of overindulgence in political activity, but such individualized conduct should be disciplined as any other neglect of employment duty and not made the predicate for wholesale deprivation of political rights of all public employees as a class.
Much water has gone over the dam since the Hatch Act was upheld in Mitchell. The later federal First Amendment cases have given a renewed vitality to individual rights and as far as I can see the nation is better off for it in terms of a more viable democracy (not a mediocracy) with more citizens allowed to participate fully in electoral processes. We stagnate when we repress exercise of democratic rights; we breed anarchy when we deny equality of rights.
Perhaps a better day is in sight for public employees  at least the Supreme Court of the United States has tentatively decided to look over the Federal Hatch Act again, despite Mitchell, in the case of National Association of Letter Carriers, AFL-CIO v. United States Civil Service Commission, D.C.D.C., 346 F. Supp. 578, opinion filed July 31, 1972, probable jurisdiction being noted therein. 409 U.S. 1058, 93 S.Ct. 560, 34 L.Ed.2d 510 (1972).
*813 However, I think the Supreme Court of Florida on its own owes a duty now to correct deprivations of Florida citizens' political rights without waiting for the United States Supreme Court when our Court has a clear case and a fundamental duty in which to do so.
NOTES
[1] 330 U.S. 75, 67 S.Ct. 556, 91 L.Ed. 754 (1947).
[2] Formerly 5 U.S.C. § 118i, now 5 U.S.C. § 7324. The present act provides in part: "(a) An employee in an Executive agency or an individual employed by the government of the District of Columbia may not  (1) use his official authority or influence for the purpose of interfering with or affecting the result of an election; or (2) take an active part in political management or in political campaigns. For the purpose of this subsection, the phrase `an active part in political management or in political campaigns' means those acts of political management or political campaigning which were prohibited on the part of employees in the competitive service before July 19, 1940, by determinations of the Civil Service Commission under the rules prescribed by the President.

"(b) An employee or individual to whom subsection (a) of this section applies retains the right to vote as he chooses and to express his opinion on political subjects and candidates."
[3] 330 U.S. 75, 98, 100, 67 S.Ct. 556, 569, 571 (1947).
[4] 330 U.S. 127, 67 S.Ct. 544, 91 L.Ed. 794 (1947).
[5] Northern Virginia Regional Park Authority v. U.S. Civil Service Commission, 437 F.2d 1346 (C.A. 4th), cert. den. 403 U.S. 936, 91 S.Ct. 2254, 29 L.Ed.2d 717 (1971), (ran for, and was elected to, State House of Delegates);

Kearney v. Macy, 409 F.2d 847, 848 (C.A. 9th 1969): "In our opinion, that case [Mitchell] insofar as it deals with an employee of the United States government such as appellant Kearney, and with a violation of the Hatch Act of the type that Kearney was found to have committed, has not been overruled either expressly or by implication by subsequent decisions of the Supreme Court of the United States." Cert. den. 397 U.S. 943, 90 S.Ct. 958, 25 L.Ed.2d 124 (1970);
Jarvis v. U.S. Civil Service Comm., 382 F.2d 339 (C.A. 6th 1967), (solicited political contributions for Democratic Party Fund Raising Dinner Committee);
In re Higginbotham, 340 F.2d 165 (C.A. 3rd), cert. den. 382 U.S. 853, 86 S.Ct. 101, 15 L.Ed.2d 91 (1965), (ran for, and was elected, alderman in municipality);
Palmer v. U.S. Civil Service Comm., 297 F.2d 450 (C.A. 7th), cert. den. 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962), (Precinct committeeman and Chairman of County Republican Committee);
State of Utah v. United States, 286 F.2d 30 (C.A. 10th), cert. den. 366 U.S. 918, 81 S.Ct. 1093, 6 L.Ed.2d 240 (1961), (fund raising for the Republican Party);
Fishkin v. U.S. Civil Service Comm., 309 F. Supp. 40 (D.C.N.D.Cal. 1969), appeal dismissed for failure to timely docket case, 396 U.S. 278, 90 S.Ct. 557, 24 L.Ed.2d 463 (1970), (became candidate for Member of County Central Committee and served as a Director of State Federation of Young Democrats);
Osheim v. U.S. Civil Service Comm., 299 F. Supp. 317 (D.C.Wis. 1969), (held organizational Democratic Party meeting, was elected alternate delegate of Ward Unit of Party and Chairman of Membership Committee);
In re Ramshaw, 266 F. Supp. 73 (D.C. Idaho 1967), (candidate for Sheriff);
Democratic State Central Committee v. Andolsek, 249 F. Supp. 1009 (D.C.D.Md. 1966), (Democratic candidate for county council and persons desiring to actively campaign for him);
Engelhardt v. U.S. Civil Service Comm., 197 F. Supp. 806 (D.C.M.D.Ala. 1961), aff'd. 304 F.2d 882 (C.A. 5th 1962), (chairman of State Democratic Executive Committee);
Smyth v. U.S. Civil Service Comm., 291 F. Supp. 568 (D.C.Wis. 1968), (ran on Republican ticket for office of county clerk).
[6] 403 U.S. 936, 91 S.Ct. 2254, 29 L.Ed.2d 717 (1971): "Certiorari denied. Mr. Justice Douglas is of the opinion that certiorari should be granted."
[7] Northern Virginia Regional Park Authority v. U.S. Civil Service Comm., 437 F.2d 1346 (C.A. 4th 1971).
[8] Id. at 1349, 1350-1351.
[9] Fort v. Civil Service Comm., 61 Cal.2d 331, 38 Cal. Rptr. 625, 392 P.2d 385 (1964); Minielly v. Oregon, 242 Or. 490, 411 P.2d 69 (1966); See also: Bagley v. Washington Township Hospital District, 65 Cal.2d 499, 55 Cal. Rptr. 401, 421 P.2d 409 (1966).
[10] Mancuso v. Taft, 341 F. Supp. 574 (D.C.R.I. 1972); Nat. Ass'n of Letter Carriers, AFL-CIO v. U.S. Civil Service Comm., 346 F. Supp. 578 (D.C.D.C. 1972).
[11] See cases cited footnote 5, supra; 8 A.L.R.Fed. 343 (1971).
[12] Laws of Florida, § 23, Chapter 67-1370 (1967).
[13] 346 F. Supp. 578 (D.C.D.C. 1972).
[14] 203 So.2d 4 (Fla. 1967).
[15] 28 A.L.R.2d 717 (1969).
[16] 309 F. Supp. 40, 45 (D.C.N.D.Cal. (1969).
[17] The employee, Fishkin, was an administrative analyst with the Contra Costa County Social Service Department. His job was to arrange for office space, desks and telephones for use by social workers. While so employed, he became a candidate for Member of County Central Committee, Third Supervisional District in the Democratic Primary election and also served as Regional Director of the California Federation of Young Democrats.