In the Matter of Aubrey D. HIGGINBOTHAM and United States Civil Service Commission, Formerly Captioned Aubrey D. Higginbotham and The Washington County, Pennsylvania, Housing Authority, Aubrey D. Higginbotham, Appellant.

No. 14768.

United States Court of Appeals Third Circuit.

Argued Sept. 22, 1964.

Decided Jan. 12, 1965.

Paul A. Simmons, Tempest & Simmons, Monongahela, for appellant.

Richard S. Salzman, Appellate Sec't., Civil Div., Dept. of Justice, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., Gustave Diamond, U. S. Atty., Sherman L. Cohn, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before HASTIE and FORMAN, Circuit Judges, and KIRKPATRICK, District Judge.

KIRKPATRICK, District Judge.

The appellant was removed from his position as an employee of the Washington County, Pennsylvania, Housing Authority by an order of the Civil Service Commission entered after appropriate proceedings. The District Court sustained the order of the Commission and this appeal from the Court's order followed.

The grounds for the appellant's removal were violations of the Hatch Act (August 2, 1939, as amended July 19, 1940) by taking an active part in political campaigns; specifically, that while in the employ of the Housing Authority, a state agency financed by loans or grants made by the United States, he had been a

4. 287 U.S. 45, 58, 53 S.Ct. 55, 60.

**166**

candidate for the office of alderman and that, having been elected to that office on November 8, 1955, and having served, he again became a candidate for alderman in the Democratic party primary election of May 16, 1961, and continued to be a candidate until he was charged with violation of the Act.

Section 12(a) of the Hatch Act, 5 U. S.C. § 118k, is as follows:

"Sec. 12(a) No officer or employee of any State or local agency whose principal employment is in connection with any activity which is financed in whole or in part by loans or grants made by the United States or by any Federal agency shall (1) use his official authority or influence for the purpose of interfering with an election or a nomination for office, or affecting the result thereof, or (2) directly or indirectly coerce, attempt to coerce, command, or advise any other such officer or employee to pay, lend, or contribute any part of his salary or compensation or anything else of value to any party, committee, organization, agency, or person for political purposes. No such officer or employee shall take any active part in political management or in political campaigns. All such persons shall retain the right to vote as they may choose and to express their opinions on all political subjects and candidates. For the purposes of the second sentence of this subsection, the term 'officer or employee' shall not be construed to include (1) the Governor or the Lieutenant Governor of any State or any person who is authorized by law to act as Governor, or the mayor of any city; (2) duly elected heads of executive departments of any State or municipality who are not classified under a State or municipal merit or civil-service system; (3) officers holding elective offices."

■ The appellant concedes that the facts relating to his political activities stated above as constituting the reason for his removal are correct. The grounds for his appeal are, (1) that he is exempt from the provisions of Section 12 by reason of the fact that, as an alderman, he is an officer "holding elective office" within the exception contained in the last sentence of the section and (2) that the fact (assumed for the purposes of this appeal) that the Housing Authority made illegal use of federal funds by providing segregated housing facilities rendered the Hatch Act inapplicable to its employees.

The appellant's argument based upon the exemption of "officers holding elective office" depends upon taking the sentence in which that expression occurs out of context. When, however, it is read as a part of a scheme to regulate the conduct of officers and employees of federally assisted state agencies, it falls naturally into place as a provision exempting officers and employees of such agencies who have been elected, rather than appointed, to their positions with the agencies.

Section 12(a) deals with state, not federal, officers and employees, but, of course, Congress cannot regulate the conduct of state officers and employees generally, and the section begins by making it clear that Congress is undertaking to regulate the conduct of persons in the employ of a federally financed activity and no others, and that limitation is carried throughout.

The section consists of four sentences which must be considered together, and any question as to the persons intended to be exempted from its provisions by the last sentence must be resolved in the light of the scope of the whole section. With the proscriptions of the first sentence, we are not concerned. It prohibits two particularly obnoxious political practices, namely, coercion by the boss and "macing," neither of which offenses are charged against the appellant. The second sentence is much broader and prohibits practically all political activity. It begins, "No such officer or employee," obviously referring to persons within the limited class mentioned in the first sentence. Still keeping to the class with

which the statute has so far been concerned ("all such persons"), the third sentence merely makes it clear that Congress did not intend to interfere in any way with the right of any citizen to vote as he pleases. The fourth and last sentence—the one upon which the appellant relies—exempts certain persons from the sweeping restraints of the second sentence.

Nowhere does it appear that the prohibitions of the section were intended to touch the conduct of a state officer whose principal employment is other than with a federally financed agency. If the theory of the appellant that every elective state officer is exempt should be adopted, it would be hard to explain why Congress thought it necessary to exempt the Governor, Lieutenant Governor, Mayors, etc. (all being elective officers) by specific designation or why the Act should have written into it a clause exempting from its provisions persons entirely outside its coverage.

From the foregoing, particularly in the light of the legislative history, it would seem to follow that the fourth sentence was intended to exempt a small but important number of state officers and employees whose official duties involve in part the administration of federally assisted projects—an elected state highway commissioner, for example—whose political activities would otherwise be banned by the broad proscriptions of the second sentence. Neither the statute, under any logical interpretation, nor the legislative history of Section 12 show any intent on the part of Congress to excuse from the restrictions of 12(a) those officers and employees (other than those expressly exempted) whose employment gives them the opportunity to use the prestige of their position and their control of federal funds, directly or indirectly, for political advantage merely because they might have concurrent or incidental employment as holders of state elective office.

However, whatever conclusion one might reach as to an interpretation of the statute based upon its language

standing alone, it seems to us that its legislative history compels a construction of the fourth sentence of Section 12(a) as being limited to persons elected to their positions in a federally assisted agency. When the Act was originally adopted, it contained a section (17), later dropped in 1948 as unnecessary. That section allowed any employee covered by the Act, who had been nominated for any public office before the Act became law, to retain his position with the agency and continue to run for the office, provided that, if successful, he would resign from the agency. The section would have been totally unnecessary if the appellant's construction of 12(a) were correct.

Furthermore, Section 18 of the Act, 5 U.S.C. § 118n, permits those subject to the Act to take part in nonpartisan political activity. Once elected to nonpartisan offices, they become "officers holding elective office." If the appellant's construction of the exemption should be adopted, such holders of elective offices would thereafter be free to take part in partisan political campaigns and thus Section 18 could be used to circumvent the prohibitions of the political activity restrictions of Section 12.

The appellant's argument that the Hatch Act cannot lawfully be applied to the employees of the Washington County Housing Authority because of its use of funds to construct segregated housing facilities need be noticed only briefly. In substance, if not in its expression, the argument runs something like this: that where the Government knowingly spends money to maintain a segregated housing facility, such expenditure is void ab initio and, therefore, since no federal money could lawfully be spent on such a project, no federal money was, in contemplation of law, spent and, hence, there is no agency "financed in whole or in part by loans or grants made by the United States" and consequently nothing to bring the Hatch Act into operation. Therefore, although the appellant did not put it quite that way, the logical conclusion from the premise of the argument would be that everyone connected

with that particular project can violate its terms with impunity. The fact is, however, that federal money was spent on this project, and the Hatch Act was intended to govern the conduct of persons employed where such money was spent. There has been no reason advanced to us, and we can think of none, which would require us to hold that Congress intended that the enforcement of the Hatch Act was to be contingent upon the good behavior of the agency.

In addition, whatever the Washington County Housing Authority may have done, that conduct is not attributable to the Civil Service Commission and played no part in the appellant's removal. In dealing with this argument, the District Court said, "I know of no rule of law that prevents one federal agency from enforcing laws of Congress where another governmental agency might be violating the provisions of law, or engaging in or permitting unconstitutional activities." Nor do we.

The order of the District Court is affirmed.