Dear Ms. Clement:
You have asked this office to advise you whether the federal Hatch Act, 5 USCA 1501, et. seq., is applicable to the Acadiana Parish ASSIST (the acronym for a self sufficiency improvement support team) Agency.
The Hatch Act imposes some restrictions on state and local employees who are employed in connection with federal funds.[1] There are three activities prohibited to covered state and local employees. They may not run for partisan office, coerce donations from other covered employees, or use their official authority to influence the results of an election.[2]
Employees of private, nonprofit organizations can be covered by the Hatch Act if the federal statute through which the organization receives funds directs that the organization shall be considered to be a state or local agency for purposes of the Hatch Act. The Head Start[3] and the Community Service Block Grant statutes include such provisions. *Page 2 
The Community Service Block Grant statutes are applicable to this matter and are found with the provisions of42 USCA § 9918(b)(1), stating:
 (b) Political activities
 (1) Treatment as a State or local agency
 For purposes of chapter 15 of Title 5, any entity that assumes responsibility for planning, developing, and coordinating activities under this chapter and receives assistance under this chapter shall be deemed to be a State or local agency. For purposes of paragraphs (1) and (2) of section 1502(a) of such title, any entity receiving assistance under this chapter shall be deemed to be a State or local agency.
The ASSIST Agency, a private, nonprofit entity which receives federal funds under the Community Services Block Grant Program (CSBG) of 42 USCA § 9918, is subject to the Hatch Act. Thus, the employees of the ASSIST Agency are subject to the restrictions of the Hatch Act.
Some state and local employees are specifically exempted from particular provisions of the Hatch Act. Employees who work for educational or research institutions such as state universities are not covered by the Act.[4] While covered state and local employees may not be candidates for public office in a partisan election, they are permitted to engage in nonpartisan political activity, including candidacy.[5] *Page 3 
Certain publicly elected officials, including city mayors, governors, lieutenant governors, and heads of municipal and state executive departments, are permitted to run for office.[6]
It is of particular interest here to note that5 USCA 1502(c)(4) states that the political prohibitions of the Hatch Act do not apply to an employee who is "an individual holding elective office". This exemption is limited to those personselected to their positions in a federally assisted agency. In the case of In Re Higginbotham, 340 F.2d 165 (1965); certden., 382 U.S. 853 (1965), an employee of a local housing authority (which entity was financed by federal funds) was elected to the office of alderman, and having served, he again became a candidate for alderman and continued to be a candidate until he was charged with a violation of the Hatch Act. He was ultimately removed from his employment with the housing authority on the grounds that he engaged in political activity prohibited by the Hatch Act.
In the case of Northern Virginia Regional Park Authority vs.United States Civil Service, 437 F.2d 1346 (App. 4th Cir. 1971), the executive director of the state regional park authority (an agency receiving federal funding) ran and was elected to the Virginia House of Delegates. Shortly thereafter, the General Counsel of the United States Civil Service Commission received a complaint alleging that the executive director had violated the Hatch Act by actively participating in political campaigns while principally employed in connection with a federally financed activity. The General Counsel dismissed the complaint based on misinformation supplied him by the Department of Housing and Urban Development that no federal grants had been made to the Park Authority during the time period in question. However, the General Counsel informed the executive director that when the park authority did receive grants under then-pending applications, he would be required to refrain from engaging in partisan political activity, specifically from running for reelection to the Virginia House of Delegates.
Despite this warning, the executive director of the park authority successfully campaigned for reelection. Administrative proceedings were initiated against the executive director for violation of the Hatch Act. The executive director in turn brought suit in the district court, urging that he was exempted from the Hatch Act since he was "an individual holding elective office". *Page 4 
The court rejected this argument, holding:
 The appellants' argument cannot withstand close scrutiny, for it depends upon reading the exemption out of the context in which it occurs, and requires us to ignore the legislative history of the Hatch Act. The Third Circuit considered precisely this question in In re Higginbotham. (citations omitted). In that case a local Democratic alderman, employed on a full time basis by a federally funded local housing authority, ran for reelection. He defended his candidacy on the same ground advanced by Lightsey in this case, namely, that he was exempt as an elective office-holder. The Third Circuit squarely rejected this interpretation of the exemption contained in 5 U.S.C. § 1502(c), as do we.
 The legislative purpose of the subsection was to exempt a small but important number of elected state officers and employees whose official duties in their elective positions involve the administration of federally assisted projects. Thus 5 U.S.C. § 1502(c) exempts Governors, Lieutenant Governors, Mayors, elected heads of executive departments, and `individual(s) holding elective office.' This last clause was designed to encompass a residual category of state officers, such as an elected state highway commissioner for example, whose elective position includes responsibility for federally funded programs. It was far from the purpose of the exemptive provision to tolerate political activity by an employee of an agency administering federal funds merely because he happens to have been elected to an entirely unrelated office.
 Other sections of the Hatch Act confirm this interpretation of 5 U.S.C. § 1502(c)(4). When the Hatch Act was originally adopted it contained a section 17 (later dropped in 1948 as obviously unnecessary) that allowed any employee covered by the Act, who had been nominated for any public office before the Act became law, to retain his position with the agency and continue to run for office, provided that if he were elected to the public office he would resign from the government agency. If the appellants' construction of the exemption were accepted, section 17 of the original Hatch Act would have been anomalous. Why would Congress have required the employee to resign, if 5 U.S.C. § 1502(c) (4), as the appellants maintain, exempted the employee altogether from the prohibition against political activity?
 The appellants' construction is also inconsistent with the legislative design of 5 U.S.C. § 1503 which permits state employees subject to the Act to engage in nonpartisan political activity, and even to run for elective offices provided those offices and activities are strictly local in nature and completely unrelated to issues and candidates that are identified with *Page 5 
national or state political parties. The prime example of such a permissible activity might be running for a nonpartisan local school board. According to the appellants' interpretation, such holders of nonpartisan elective offices would thereafter be free to take part in partisan political campaigns since they would be `individual(s) holding elective office(s).' That result unquestionably would do violence to the congressional intent underlying 5 U.S.C. § 1503 to allow government employees to participate only in nonpartisan local affairs.
The court ultimately held that the executive director's dismissal for partisan political activity was warranted.
In summary, the Hatch Act is applicable to the ASSIST Agency and its employees. Whether or not a particular employee is prohibited from engaging in political activity is dependant on the particular facts of the case.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 CHARLES C. FOTI, JR.
 ATTORNEY GENERAL
 BY: ______________________
 KERRY L. KILPATRICK
 ASSISTANT ATTORNEY GENERAL
[1] 5 USCA 1501(4) defines a local employee as: "state or local officer or employee" means an individual employed by a State or local agency whose principal employment is in connection with an activity which is financed in whole or in part by loans or grants made by the United States or a Federal agency.
[2] 5 USCA 1502(a) states:
A State or local officer or employee may not —
(1) use his official authority or influence for the purpose of interfering with or affecting the result of an election or a nomination for office;
(2) directly or indirectly coerce, attempt to coerce, command, or advise a State or local officer or employee to pay, lend, or contribute anything of value to a party, committee, organization, agency, or person for political purposes; or
(3) be a candidate for elective office.
[3] See 42 U.S.C.A. § 9851, providing:
TITLE 42. THE PUBLIC HEALTH AND WELFARE CHAPTER 105 — COMMUNITY SERVICES PROGRAMS SUBCHAPTER II — HEAD START PROGRAMS § 9851. Political activities
(a) For purposes of chapter 15 of Title 5, any agency which assumes responsibility for planning, developing, and coordinating Head Start programs and receives assistance under this subchapter shall be deemed to be a State or local agency. For purposes of clauses (1) and (2) of section 1502(a) of such title, any agency receiving assistance under this subchapter shall be deemed to be a State or local agency.
(b) Programs assisted under this subchapter shall not be carried on in a manner involving the use of program funds, the provision of services, or the employment or assignment of personnel in a manner supporting or resulting in the identification of such programs with (1) any partisan or nonpartisan political activity or any other political activity associated with a candidate, or contending faction or group, in an election for public or party office; (2) any activity to provide voters or prospective voters with transportation to the polls or similar assistance in connection with any such election; or (3) any voter registration activity. The Secretary, after consultation with the Office of Personnel Management, shall issue rules and regulations to provide for the enforcement of this section, which shall include provisions for summary suspension of assistance or other action necessary to permit enforcement on an emergency basis.
[4] 5 USCA 1501(4)(B) excludes from the definition of "state or local officer or employee":
(B) an individual employed by an educational or research institution, establishment, agency, or system which is supported in whole or in part by a State or political subdivision thereof, or by a recognized religious, philanthropic, or cultural organization.
[5] 5 U.S.C.A. § 1503 states:
CHAPTER 15 — POLITICAL ACTIVITY OF CERTAIN STATE AND LOCAL EMPLOYEES § 1503. Nonpartisan candidacies permitted
Section 1502(a)(3) of this title does not prohibit any State or local officer or employee from being a candidate in any election if none of the candidates is to be nominated or elected at such election as representing a party any of whose candidates for Presidential elector received votes in the last preceding election at which Presidential electors were selected.
[6] 5 USCA 1502(c) states:
Subsection (a)(3) of this section does not apply to —
(1) the Governor or Lieutenant Governor of a State or an individual authorized by law to act as Governor;
(2) the mayor of a city;
(3) a duly elected head of an executive department of a State or municipality who is not classified under a State or municipal merit or civil-service system; or
(4) an individual holding elective office.